FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

2014 NOV 12   PH 2: 40

MIDDLE DIST ... OF FLORIDA
JACKSONVILLE, FLORIDA

| | |
|---|---|
| MARY SATING, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RAYONIER INC., PAUL G. BOYNTON, HANS E. VANDEN NOORT, DAVID L. NUNES, and H. EDWIN KIKER,<br><br>Defendants. | Case No. 3:14-cv-1395-J-84 JBT<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Mary Sating ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Rayonier Inc., ("Rayonier" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Rayonier securities between February 28, 2014 and November 7, 2014 both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Rayonier, Inc. engages in the sale and development of real estate and timberland management, as well as in the production and sale of cellulose fibers in the United States, New Zealand, and Australia. The company operates in four segments: Timber, Real Estate, Performance Fibers, and Wood Products.

3.      The Timber segment owns, leases, or manages timberlands and sells standing timber at auction to third parties, as well as delivered logs.  The Company's Real Estate segment sells medium and large tracts of land with infrastructure. This segment holds development and rural properties primarily in the southeast United States. The Performance Fibers segment manufactures cellulose specialties that are used principally in acetate textile fibers, cigarette filters, rigid packaging, LCD screens, photographic film, impact-resistant plastics, high-tenacity rayon yarn, pharmaceuticals, cosmetics, detergents, food casings, and food products; and absorbent materials that are used in disposable baby diapers, feminine hygiene products, incontinence pads, convalescent bed pads, industrial towels and wipes, and nonwoven fabrics. The Wood Products segment primarily manufactures and sells dimension lumber used for residential and industrial construction applications. In addition, Rayonier is involved in trading and exporting logs, lumber, and wood panel products.

4.       The Company owned, leased, or managed approximately 2.5 million acres of timberland and real estate. The company has a joint venture with RREEF Infrastructure to own and manage timber lands in New Zealand. Rayonier has elected to be treated as a real estate investment trust (REIT) for federal income tax purposes and is not subject to federal income tax on its REIT income that it distributes to shareholders.

5.       The Company, formerly known as Rainier Pulp & Paper Company, was founded in 1926. Rayonier is headquartered in Jacksonville, Florida and its shares trade on the NYSE under the ticker symbol "RYN".

6.       Throughout the Class Period, defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (1) Rayonier's financial statements overstated its estimated merchantable timber inventory volumes by including timber in specially designated parcels located in restricted, environmentally sensitive or economically inaccessible areas; (2) the inclusion of this timber was incorrect, inconsistent with Rayonier's historical definition of merchantable timber inventory, and a significant change from prior years; (3) Rayonier's financial statements understated depletion expense in cost of goods sold by approximately $2.0 million in each of the quarterly periods ended March 31, 2014, and June 30, 2014, which resulted in a corresponding overstatement of income from continuing operations of $1.9 million and $2.0 million, respectively, in those periods; (4) there was a material weakness in Rayonier's internal controls related to financial reporting as of December 31, 2013, March 31, 2014, and June 30, 2014; and (5) as a result of the foregoing, Rayonier's public statements were materially false and misleading at all relevant times.

7.      On November 10, 2014, before the market opened for trading, the Company

issued a press release and filed a Form 8-K with the SEC, reporting third quarter results and

announcing a restatement of prior issued financial statements, which contained material errors. In

the press release the Company stated, in part:

> Following the spin-off of Rayonier's Performance Fibers business into Rayonier
> Advanced Materials, Rayonier's new management conducted a review of the
> Company's operations and business strategies and identified issues related to its
> historical timber harvest levels, its estimate of merchantable timber inventory and
> the effect of such estimate on its calculation of depletion expense. At the direction
> of the Board of Directors, management commenced an internal review of these
> matters, with the assistance of independent counsel, forensic accountants and
> financial advisers.
>
> As a result of the findings of its internal review, the Company's management and
> Board of Directors took a number of actions to strengthen operations, realign
> capital allocation priorities, and increase transparency. Key findings and actions
> that resulted from the internal review are summarized below:
>
> • The Company included in the merchantable timber inventory disclosed in its
>   Annual Report on Form 10-K for the fiscal year ended December 31, 2013
>   (the "Initial Form 10-K"), timber in specially designated parcels located in
>   restricted, environmentally sensitive or economically inaccessible areas. The
>   inclusion of this timber was incorrect, inconsistent with Rayonier's historical
>   definition of merchantable timber inventory, and a significant change from
>   prior years. The Company's revised estimate of merchantable timber
>   inventory, as of December 31, 2013, is set forth below.

| (Tons in 000s) | As disclosed in the Initial Form 10-K | As disclosed in the Amended Form 10-K | Percentage Difference |
|---|---|---|---|
| Atlantic | 37,121 | 34,324 | (8)% |
| Gulf | 28,534 | 24,641 | (14)% |
| Northern | 9,097 | 7,370 | (19)% |
| New Zealand | 13,792 | 13,792 | — % |
| Total | 88,544 | 80,127 | (10)% |

> *        *        *
>
> • As a result of the incorrect and inconsistent inclusion of timber in specially
>   designated parcels located in restricted, environmentally sensitive or
>   economically inaccessible areas in the merchantable timber inventory for
>   2014 as discussed above, Rayonier concluded that it understated depletion
>   expense in cost of goods sold in the quarterly periods ended March 31, 2014

and June 30, 2014, which resulted in a corresponding overstatement of income from continuing operations. In addition, management determined that there was a material weakness in Rayonier's internal controls related to merchantable timber inventory as of December 31, 2013, March 31, 2014, June 30, 2014 and September 30, 2014. The Company has filed amendments to its Forms 10-Q for the quarterly periods ended March 31, 2014 and June 30, 2014 and restated its interim consolidated financial statements for those periods. Rayonier determined that errors in depletion expense calculated in the years ended December 31, 2013, and 2012 were immaterial and did not require restatement. The cumulative effect of the immaterial errors in depletion expense for these and prior periods are reflected in Rayonier's financial statements for the third quarter of 2014 as an out-of-period adjustment.

*     *     *

8.       As a result of this news, shares of Rayonier fell $5.08 or almost 15%, on unusually heavy volume, to close at $28.824 on November 10, 2014.

9.       As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.       The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

11.       This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

12.       Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as defendant is headquartered in this District and a significant portion of the defendants' actions, took place within this District.

13.       In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate

commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14.     Plaintiff, as set forth in the attached Certification, acquired Rayonier securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.     Defendant Rayonier is a North Carolina corporation with its principal executive offices located at 1301 Riverplace Boulevard, Suite 2300, Jacksonville, FL 32207. Rayonier's common stock trades on the NYSE under the ticker symbol "RYN."

16.     Defendant Paul G. Boynton has served at all relevant times until June 27, 2014, as the Company's Chairman, President, and Chief Executive Officer ("CEO").

17.     Defendant David L. Nunes ("Nunes") has served at all relevant times beggining June 28, 2014, as the Company's President, CEO, and Director.

18.     Defendant Hans E. Vanden Noort has served at all relevant times until his retirement on April 30, 2014, as the Company's Senior Vice President and Chief Financial Officer ("CFO").

19.     Defendant H. Edwin Kiker ("Kiker") has served at all relevant times beginning May 1, 2014, as the Company's Senior Vice President and Chief Financial Officer.

20.     The defendants referenced above in ¶¶ 16 - 19 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

21.      Rayonier, Inc. engages in the sale and development of real estate and timberland management, as well as in the production and sale of cellulose fibers in the United States, New Zealand, and Australia. The company operates in four segments: Timber, Real Estate, Performance Fibers, and Wood Products.

22.      The company has a joint venture with RREEF Infrastructure to own and manage timber lands in New Zealand. Rayonier has elected to be treated as a real estate investment trust (REIT) for federal income tax purposes and would not be subject to federal income tax on its REIT income that it distributes to its shareholders.

23.      The company, formerly known as Rainier Pulp & Paper Company, was founded in 1926. Rayonier is headquartered in Jacksonville, Florida and its shares trades on the NYSE under the ticker symbol "RYN".

### Materially False and Misleading
### Statements Issued During the Period

24.      On February 28, 2014, the Company filed an annual report on Form 10-K with the SEC, signed by Defendants Boynton and Vanden Noort, announcing its financial and operating results for the fourth quarter and full year ended December 31, 2013. For the fourth quarter, the Company announced net income of $79.7 million or $0.49 per share on a diluted basis, on revenue of $520.2 million, compared to net income of $75.6 million, or $0.59 per share on a diluted basis, on revenue of $412 million for same period in the prior year. For the full year, the Company reported net income of $371.9 million, or $2.86 per diluted share, on revenue of $1.71 billion, compared to net income of $278.69 million, or $2.17 per diluted share, on revenue of $1.48 billion for the prior year. The 10-K contained signed certifications pursuant to the

Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Boynton and Vanden Noort, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

25.     In addition, the 10-K contained the following statement regarding Rayonier's estimated merchantable timber inventory volumes:

> Merchantable timber inventory is an estimate of timber volume based on the earliest economically harvestable age. Estimates are based on an inventory system that involves periodic statistical sampling. Adjustments are made on the basis of growth estimates, harvest information and environmental restrictions. The merchantable age (age at which timber moves from pre-merchantable to merchantable) is 15 years for the Atlantic and Gulf regions excluding Oklahoma, 17 years for Oklahoma, 35 years for the Northern region and 20 years for radiata pine in New Zealand. **Timber located in restricted or environmentally sensitive areas is not included in the merchantable inventory shown below.**

> The following table sets forth the estimated volumes of merchantable timber by location and type, as of December 31, 2013 (in thousands of short green tons):

| Location | Softwood | Hardwood | Total | % |
|---|---|---|---|---|
| Atlantic | 24,379 | 12,742 | 37,121 | 42 |
| Gulf | 20,103 | 8,431 | 28,534 | 32 |
| Northern | 8,489 | 608 | 9,097 | 10 |
| New Zealand | 13,251 | 541 | 13,792 | 16 |
| | | | 88,544 | 100 |

26.     On April 28, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing an update on its planed separation with Rayonier Advanced Materials, which was announced previously on January 27, 2014. In the press release, the Company also provided an update on its executive leadership, including that as previously disclosed, Boynton would leave Rayonier to join Rayonier Advanced Materials, and that Vanden Noort would be retiring. The press release stated, in part:

> As previously disclosed, upon completion of the separation, Mr. Boynton will become Chairman, President and CEO of Rayonier Advanced Materials. Mr. Boynton has been working closely with the Rayonier Board to identify the new CEO of Rayonier, with the search including both internal and external candidates.

We are in the final stage of the process and expect to announce the identified new CEO of Rayonier in early May.

"We've been very pleased with the CEO search process and are very confident that the new CEO will continue Rayonier's history of building shareholder value for the long term," said Boynton.

Rayonier also announced today that H. Edwin Kiker will become its next Senior Vice President and Chief Financial Officer, effective May 1, 2014. Kiker, who will report to the new CEO of Rayonier upon separation, has held a series of senior roles with Rayonier during his twelve-year tenure with the company, including Controller of Rayonier's Real Estate business, Vice President of Internal Audit and, most recently, Vice President of Investor Relations. Prior to joining the Company, he held audit positions with Great Lakes Chemical and PricewaterhouseCoopers. He will replace Hans Vanden Noort, Rayonier's current Senior Vice President and Chief Financial Officer since 2007, who plans to retire from Rayonier effective April 30, 2014.

27.     On April 29, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the first quarter ending March 31, 2014. The Company reported net income of $43.4 million, or $0.34 per diluted share, on revenue of $386.7 million, compared to net income of $147.7 million, or $1.13 per diluted share, on revenue of $393.7 million, for the same period in the prior year. The Company also reported for Cost of Sales of $302.7 million, which included "depreciation, depletion and amortization" of $46.8 million.

28.     On April 30, 2014, the Company filed a Form 10-Q with the SEC which was signed by Defendant Vanden Noort, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Boynton and Vanden Noort, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

29.     On May 12, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing the appointment of Nunes as CEO. The press release stated, in part:

JACKSONVILLE, Fla., May 12, 2014 - Rayonier (NYSE:RYN) today announced the appointment of David L. Nunes as chief operating officer. Upon Rayonier's previously announced mid-year separation, Nunes will assume the role of President and CEO of Rayonier and Paul Boynton, Rayonier's current Chairman, President and CEO, will become Chairman, President and CEO of Rayonier Advanced Materials.

30.     On May 27, 2014, the Company issued a press release and filed a Form 8-K

with the SEC announcing that its Board of Directors had approved the separation of Rayonier

Advanced Materials. In the press release, the Company stated, in part:

JACKSONVILLE, Fla., May 27, 2014 - Rayonier Inc. (NYSE:RYN) today announced that its Board of Directors has approved the separation of its Performance Fibers business, which will be known as Rayonier Advanced Materials, and declared a special dividend distribution of all outstanding shares of Rayonier Advanced Materials common stock to Rayonier's shareholders.

*     *     *

After the distribution, Rayonier Advanced Materials will be an independent, publicly-traded company and Rayonier will retain no ownership interest in Rayonier Advanced Materials. Rayonier Advanced Materials common stock is expected to begin regular trading on or about June 30, 2014 on the New York Stock Exchange (NYSE) under the ticker symbol RYAM. Rayonier will continue to trade on the NYSE under the ticker symbol RYN.

31.     On June 30, 2014, the Company issued a press release and filed a Form 8-K

with the SEC announcing that it completed the spin-off of Rayonier Advanced Materials Inc. and

stating that effective as of the completion of the spin-off, Nunes became Rayonier's President

and CEO. The press release stated, in part:

JACKSONVILLE, Fla., June 30, 2014 – Rayonier Inc. (NYSE: RYN) today announced that at 11:59 p.m., Eastern Time, on June 27, 2014, it completed the spin-off of Rayonier Advanced Materials Inc. (NYSE: RYAM), which is now a new independent specialty chemicals company. Public trading of Rayonier Advanced Materials will commence in the "regular way" with the opening bell of the New York Stock Exchange this morning under the "RYAM" ticker symbol. The separation was effected by means of a tax-free spin-off of 100 percent of the common stock of Rayonier Advanced Materials to Rayonier shareholders of record as of the close of business on June 18, 2014.

As previously announced, effective as of the completion of the spin-off, Richard Kincaid is Chairman of the Board of Rayonier, and David Nunes is Rayonier's President and CEO.

32.     On July 29, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the second quarter ending June 30, 2014. The Company reported net income of $18.4 million, or $0.14 per diluted share, on revenue of $163.1 million, compared to net income of $87.2 million, or $0.67 per diluted share, on revenue of $154.9 million for the same period in the prior year. The Company also reported for the period, Cost of Sales $121.1 million, which included "depreciation, depletion and amortization" of $54.5 million.

33.     On August 8, 2014, the Company filed a Form 10-Q with the SEC which was signed by Defendant Kiker, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Nunes and Kiker, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

34.     The statements referenced in ¶¶ 24-25, 27-28, and 32-33 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them, including that: (1) Rayonier's financial statements overstated its estimated merchantable timber inventory volumes by including timber in specially designated parcels located in restricted, environmentally sensitive or economically inaccessible areas; (2) the inclusion of this timber was incorrect, inconsistent with Rayonier's historical definition of merchantable timber inventory, and a significant change from prior years; (3) Rayonier's financial statements understated depletion expense in cost of goods sold by approximately $2.0 million in each of the quarterly periods

ended March 31, 2014, and June 30, 2014, which resulted in a corresponding overstatement of income from continuing operations of $1.9 million and $2.0 million, respectively, in those periods; (4) There was a material weakness in Rayonier's internal controls related to financial reporting as of December 31, 2013, March 31, 2014, and June 30, 2014; and (5) as a result of the foregoing, Rayonier's public statements were materially false and misleading at all relevant times.

## The Truth Emerges

35.     On November 10, 2014, before the market opened for trading, the Company issued a press release and filed a Form 8-K with the SEC, reporting third quarter results and announcing a restatement of their prior issued financial statements, which contained material errors. In the press release the Company stated, in part:

> Following the spin-off of Rayonier's Performance Fibers business into Rayonier Advanced Materials, Rayonier's new management conducted a review of the Company's operations and business strategies and identified issues related to its historical timber harvest levels, its estimate of merchantable timber inventory and the effect of such estimate on its calculation of depletion expense. At the direction of the Board of Directors, management commenced an internal review of these matters, with the assistance of independent counsel, forensic accountants and financial advisers.

> As a result of the findings of its internal review, the Company's management and Board of Directors took a number of actions to strengthen operations, realign capital allocation priorities, and increase transparency. Key findings and actions that resulted from the internal review are summarized below:

> - The Company included in the merchantable timber inventory disclosed in its Annual Report on Form 10-K for the fiscal year ended December 31, 2013 (the "Initial Form 10-K"), timber in specially designated parcels located in restricted, environmentally sensitive or economically inaccessible areas. The inclusion of this timber was incorrect, inconsistent with Rayonier's historical definition of merchantable timber inventory, and a significant change from prior years. The Company's revised estimate of merchantable timber inventory, as of December 31, 2013, is set forth below.

| (Tons in 000s) | As disclosed in the Initial Form 10-K | As disclosed in the Amended Form 10-K | Percentage Difference |
|---|---|---|---|
| Atlantic | 37,121 | 34,324 | (8)% |
| Gulf | 28,534 | 24,641 | (14)% |
| Northern | 9,097 | 7,370 | (19)% |
| New Zealand | 13,792 | 13,792 | — % |
| Total | 88,544 | 80,127 | (10)% |

\*      \*      \*

- As a result of the incorrect and inconsistent inclusion of timber in specially designated parcels located in restricted, environmentally sensitive or economically inaccessible areas in the merchantable timber inventory for 2014 as discussed above, Rayonier concluded that it understated depletion expense in cost of goods sold in the quarterly periods ended March 31, 2014 and June 30, 2014, which resulted in a corresponding overstatement of income from continuing operations. In addition, management determined that there was a material weakness in Rayonier's internal controls related to merchantable timber inventory as of December 31, 2013, March 31, 2014, June 30, 2014 and September 30, 2014. The Company has filed amendments to its Forms 10-Q for the quarterly periods ended March 31, 2014 and June 30, 2014 and restated its interim consolidated financial statements for those periods. Rayonier determined that errors in depletion expense calculated in the years ended December 31, 2013, and 2012 were immaterial and did not require restatement. The cumulative effect of the immaterial errors in depletion expense for these and prior periods are reflected in Rayonier's financial statements for the third quarter of 2014 as an out-of-period adjustment.

\*      \*      \*

**Restatement of Financial Results**

As discussed above, Rayonier included in merchantable timber inventory for 2014, timber in specially designated parcels located in restricted, environmentally sensitive or economically inaccessible areas, which was incorrect, inconsistent with its definition of merchantable timber inventory, and a significant change from prior years. As a result, Rayonier concluded that it understated depletion expense in cost of goods sold by approximately $2.0 million in each of the quarterly periods ended March 31, 2014, and June 30, 2014, which resulted in a corresponding overstatement of income from continuing operations of $1.9 million and $2.0 million, respectively, in those periods. In addition, management determined that there was a material weakness in Rayonier's internal controls related to merchantable timber inventory as of December 31, 2013, March 31, 2014, June 30, 2014 and September 30, 2014. Accordingly, Rayonier has filed amendments to its Forms 10-Q for the quarterly periods ended March 31, 2014

and June 30, 2014 and restated its interim consolidated financial statements for those periods. Rayonier determined that errors in depletion expense calculated in the years ended December 31, 2013, and 2012 were immaterial and did not require restatement. The cumulative effect of the immaterial errors in depletion expense for these and prior periods are reflected in Rayonier's financial statements for the third quarter of 2014 as an out-of-period adjustment.

*     *     *

The Company advises investors that these previously filed financial statements for the indicated periods, and the Company's previously issued 2014 full year guidance, should no longer be relied upon.

Due to the material weakness discussed above, Rayonier also advises investors that both management's assessment and the report of Rayonier's independent registered public accounting firm, Ernst & Young LLP ("E&Y"), on internal control over financial reporting included in the Initial Form 10-K should no longer be relied upon. Rayonier is filing an amendment to its Initial Form 10-K to, among other things, revise management's report on internal control over financial reporting and the report of Rayonier's independent registered public accounting firm, in each case, disclosing management's determination that, as of December 31, 2013, there was a material weakness in Rayonier's internal control over financial reporting.

36.     As a result of this news, shares of Rayonier fell $5.08 or almost 15% on unusually heavy volume, to close at $28.824 on November 10, 2014.

37.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Rayonier securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.   Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of

their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

39. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Rayonier securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Rayonier or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

41. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Rayonier;

- whether the Individual Defendants caused Rayonier to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Rayonier securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

43.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

44.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Rayonier securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Rayonier securities between the time the defendants failed to disclose or misrepresented

material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

45.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

46.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

47.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

49.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and

other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Rayonier securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Rayonier securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

50.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Rayonier securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Rayonier's finances and business prospects.

51.     By virtue of their positions at Rayonier, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

52.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Rayonier securities from their personal portfolios.

53.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control.  As the senior managers and/or directors of Rayonier, the Individual Defendants had knowledge of the details of Rayonier's internal affairs.

54.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Rayonier.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Rayonier's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Rayonier securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Rayonier's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Rayonier securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

55.     During the Class Period, Rayonier securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be

disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Rayonier securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Rayonier securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Rayonier securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

56.      By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57.      As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

58.      Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59.      During the Class Period, the Individual Defendants participated in the operation and management of Rayonier, and conducted and participated, directly and indirectly,

in the conduct of Rayonier's business affairs. Because of their senior positions, they knew the adverse non-public information about Rayonier's misstatement of income and expenses and false financial statements.

60.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Rayonier's financial condition and results of operations, and to correct promptly any public statements issued by Rayonier which had become materially false or misleading.

61.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Rayonier disseminated in the marketplace during the Class Period concerning Rayonier's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Rayonier to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Rayonier within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Rayonier securities.

62.    Each of the Individual Defendants, therefore, acted as a controlling person of Rayonier. By reason of their senior management positions and/or being directors of Rayonier, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Rayonier to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Rayonier and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

63.      By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Rayonier.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: November 11, 2014

Respectfully submitted,

POMERANTZ LLP

Jayne A. Goldstein
1792 Bell Tower Lane, Suite 203
Weston, Florida 33326
Telephone:  (954) 315-3454
Facsimile:  (954) 315-3455
jagoldstein@pomlaw.com

**POMERANTZ LLP**

Jeremy A. Lieberman
Francis P. McConville
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
*Attorneys for Plaintiff*


**BRONSTEIN GEWIRTZ &
GROSSMAN LLC**
Peretz Bronstein
60 East 42nd Street
Suite 4600
New York, NY 10165
Phone:  212-697-6484
Fax:  212-697-7296


*Counsel for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.   I, _____ Mary Sating _____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Rayonier Inc. ("Rayonier" or the "Company") and, authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Rayonier securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Rayonier securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Rayonier securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed _____ 11/10/2014 _____
                  (Date)

_____
(Signature)

_____ Mary Sating
              (Type or Print Name)

**RAYONIER INC. (RYN)**                                                    **Sating, Mary**

## LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 8/25/2014 | PUR | 38 | $34.1999 |

sating1