**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

---------------------------------------------------------------------x
:
:
:
IN RE RAYONIER INC. SECURITIES LITIGATION  :   Case No. 3:14-cv-1395-J-32JBT
:
:   **CLASS ACTION**
:
:
---------------------------------------------------------------------x

**DEFENDANT PAUL G. BOYNTON'S**
**MOTION TO DISMISS THE AMENDED**
**CONSOLIDATED CLASS ACTION COMPLAINT**
**AND INCORPORATED MEMORANDUM OF LAW**

       FRIEDMAN KAPLAN SEILER &
        ADELMAN LLP
       Jeffrey R. Wang (admitted *pro hac vice*)
       7 Times Square
       New York, NY  10036-6516
       (212) 833-1100 (tel.)
       (212) 833-1250 (fax.)
       jwang@fklaw.com
       Trial Counsel

       *- and -*

       FOLEY & LARDNER LLP
       Christopher Ryan Maloney
       FL Bar No. 0652903
       1 Independent Drive - Suite 1300
       PO Box 240
       Jacksonville, FL 32202-0240
       (904) 359-2000 (tel.)
       (904) 359 8700 (fax)
       cmaloney@foley.com

October 26, 2015       *Attorneys for Defendant Paul G. Boynton*

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ....................................................................................................3

    A.    Mr. Boynton's Statements ................................................................................5

    B.    Allegations Concerning Mr. Boynton's Alleged Scienter .......................................8

ARGUMENT ...........................................................................................................................9

I. PLAINTIFFS AGAIN FAIL TO STATE A
   SECTION 10(B) CLAIM AGAINST MR. BOYNTON .....................................................9

    A.    Mr. Boynton's Alleged Misstatements Are Not Actionable...............................10

        *1.*    *Mr. Boynton's Statements about Harvesting Practices Were Not False.* ..................................................................................................10

        *2.*    *Mr. Boynton's Statements in Rayonier's "Sustainability Report" Were Neither False Nor Material.* ................................................11

        *3.*    *Mr. Boynton's Statements About Rayonier's Future Harvest Are Non- Actionable Forward-Looking Statements.* ..................................12

    B.    Plaintiffs Fail to Allege a "Strong Inference" of Mr. Boynton's Scienter. ..................................................................................................13

CONCLUSION ......................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Dental Ass'n v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) .................................................................................. 10-11

*Campo v. Sears Holding Corp.*,
   371 F. App'x 212 (2d Cir. 2010) ................................................................................. 13-14

*City of St. Clair Shores Gen. Emps. Ret. Sys. v. Lender
   Processing Servs., Inc.*,
   No. 3:10-cv-1073-J-32JBT, 2012 WL 1080953 (M.D. Fla. Mar. 30, 2012) ....................13

*FindWhat Investor Grp. v. FindWhat.com*,
   658 F.3d 1282, 1303 (11th Cir. 2011) ................................................................................15

*Mizzaro v. Home Depot, Inc.*,
   544 F.3d 1230 (11th Cir. 2008) ...............................................................................10, 13

*Mogensen v. Body Cent. Corp.*,
   15 F. Supp. 3d 1191 (M.D. Fla. 2014) ..............................................................................14

*Philadelphia Fin. Mgmt. of San Francisco, LLC v. DJSP Enters., Inc.*,
   572 F. App'x 713 (11th Cir. 2014) .....................................................................................12

*In re Royal Caribbean Cruises Ltd. Sec. Litig.*,
   No. 1:11–22855–CIV, 2013 WL 3295951 (S.D. Fla. Apr. 19, 2013) ................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ..........................................................................................................13

*Thompson v. RelationServe Media, Inc.*,
   610 F.3d 628 (11th Cir. 2010) ...........................................................................................15

**Statutes & Regulations**

15 U.S.C. § 78j(b) ("Section 10(b)") .....................................................................................9, 15

15 U.S.C. § 78t(a) ("Section 20(a)") .........................................................................................15

17 C.F.R. § 240.10b-5 .........................................................................................................10, 12

Defendant Paul G. Boynton hereby moves to dismiss with prejudice the claims asserted against him in the Amended Consolidated Class Action Complaint (the "Amended Complaint").  Mr. Boynton also adopts the arguments asserted in the motion to dismiss filed by defendant Rayonier Inc. ("Rayonier") in full and incorporates them herein.

**PRELIMINARY STATEMENT**

In their original complaint (Dkt. No. 64), plaintiffs cherry-picked a handful of Mr. Boynton's broad statements about "sustainability" and presented them out of context in an attempt to create the illusion that Mr. Boynton and the other defendants somehow committed securities fraud.  This attempted illusion involved two steps.  First, the original complaint improperly conflated Mr. Boynton's statements about sustainability with the "sustainable yield in perpetuity" timber harvesting strategy that was adopted by Rayonier's new management only *after* Mr. Boynton left the company in June 2014.  Second, plaintiffs ignored language *in the allegedly misleading statements themselves* which demonstrated that at the time Mr. Boynton made those statements, Rayonier's harvest strategy emphasized flexibility and responding to market fluctuations – not rigid harvest level limitations – to promote overall economic sustainability.  Plaintiffs' original complaint was dismissed by this Court, without prejudice, and with an admonition to "fine-tune and hone" the allegations.

Now, in an attempt to salvage their claims against Mr. Boynton, the Amended Complaint stretches the putative Class Period back to October 26, 2010 – well before Mr. Boynton's tenure as Rayonier's CEO – so as to include certain statements that Rayonier had deferred volume and was harvesting trees below its "sustainable harvest level" in the Pacific Northwest.  The crux of the Amended Complaint is that these statements were false because,

1

as Mr. Boynton and the other defendants allegedly knew, Rayonier's Pacific Northwest harvest exceeded its purported "true sustainable rate" of 160 million board feet ("MMBF") of timber per year.

But the Amended Complaint depends on the same two-part illusion as the plaintiffs' original complaint.  First, plaintiffs again ignore the context in which Mr. Boynton's statements were made – context which demonstrates that the statements were true when made because Rayonier had, in fact, decreased its harvest level below the rate it had sustained for a decade as part of its flexible, market-based harvesting strategy.  Second, the Amended Complaint again conflates Mr. Boynton's comments made *between 2010 and 2012* concerning Rayonier's "sustainable harvest level" with the 160 MMBF gauge of sustainability that was adopted by Rayonier's management *in 2014*.  In furtherance of this approach, the Amended Complaint also relies on new allegations attributed to a confidential witness, CW5, to assert that Mr. Boynton and others knew at the time that Rayonier's "true" sustainable harvest rate in the Pacific Northwest was 160 MMBF and that Rayonier was harvesting above this rate.  As detailed in Rayonier's motion, however, plaintiffs' ploy collapses not just because of the insufficiency of their allegations but also because *CW5 denies making the statements on which these allegations are based and disagrees with the substance of the allegations.*

Plaintiffs' claims cannot survive.  *First*, none of the statements attributed to Mr. Boynton are actionable under the securities laws.  The Amended Complaint does not plausibly allege that Mr. Boynton's statements concerning Rayonier's harvesting practices in the Pacific Northwest were false or misleading.  Rather, the context of those statements

2

demonstrates that they accurately reflected Rayonier's harvesting levels and its timber harvest strategy at the time. Moreover, Mr. Boynton's statements concerning the general "sustainability" of Rayonier's business practices are immaterial. And because Mr. Boynton's statements about Rayonier's future harvests are forward-looking, they are non-actionable. *Second*, plaintiffs again fail to plead specific facts supporting a "strong inference" of Mr. Boynton's scienter. Because CW5 has disavowed many of the allegations attributed to him and plaintiffs' other allegations are insufficient, there is no basis for plaintiffs' claim that Rayonier's "true sustainable rate" in the Pacific Northwest during the Class Period was 160 MMBF. Consequently, there is also no support for the plaintiffs' assertion that Mr. Boynton knew that Rayonier was harvesting above a level it considered "sustainable" at the time of his statements, and thus nothing to support a "strong inference" of scienter.

In short, there was no basis for accusing Mr. Boynton of securities law violations before, and the Amended Complaint confirms there is none now. Plaintiffs have had their opportunity to "fine-tune and hone" their allegations, yet they have failed to do so. The claims against Mr. Boynton should now be dismissed with prejudice.

## STATEMENT OF FACTS[1]

At the beginning of the Class Period Mr. Boynton served as Rayonier's President and Chief Operating Officer. (Am. Compl. ¶ 23.) He was appointed to Rayonier's Board on February 18, 2011, became Rayonier's CEO on January 1, 2012, and Chairman on May 17, 2012. Mr. Boynton served in these roles until he left Rayonier in June 2014 to become of the CEO of Rayonier's spun-off performance fibers business, RYAM. (*Id.*)

---

[1] The following facts are gleaned from the Amended Complaint and the documents incorporated therein.

As demonstrated by documents cited in the Amended Complaint, Rayonier and Mr. Boynton fully disclosed the company's actual harvesting volume in the Pacific Northwest. For example, the Amended Complaint acknowledges that during an October 26, 2010 investor conference call "Boynton showed [Rayonier's] historical harvesting in Washington State in 2008, 2009 and the first three quarter of 2010[.]" (Am. Compl. ¶¶ 46, 141; Rayonier Mot. Ex. 3, at 8.)[2] Indeed, at no point does the Amended Complaint allege that Mr. Boynton or anyone at Rayonier misrepresented Rayonier's actual harvesting volumes in the Pacific Northwest. Further, as Figure 1 of the Amended Complaint shows (Am. Compl. p. 49), from 2001 through 2009 Rayonier sustained an average annual harvest volume of roughly 245 MMBF in the Pacific Northwest and, from 2001 through the end of the Class Period in 2014, sustained an average annual harvest volume of approximately 230 MMBF.

The documents cited in the Amended Complaint also make clear that Mr. Boynton and Rayonier regularly disclosed Rayonier's flexible, market-based timber harvesting strategy, a strategy that Rayonier had employed long before Mr. Boynton's tenure as CEO. For example, during the October 26, 2010 investor conference call (cited at Am. Compl. ¶¶ 46, 141), Rayonier's then-CEO, Lee Thomas, stated that Rayonier "adjusted harvest levels and product mix to respond to specific opportunities in the pulpwood and export markets[.]" (Rayonier Mot. Ex. 4, at 2.)[3] During his February 24, 2011 investor presentation (cited at Am. Compl. ¶¶ 49, 147), Mr. Boynton noted that "[i]n the Northwest

---

[2] (*See also* Am. Compl. ¶¶ 47, 143; Rayonier Mot. Ex. 5, at 8.)

[3] Similarly, during the January 25, 2011 investor presentation (cited at Am. Compl. ¶¶ 47, 143), Mr. Thomas noted that Rayonier was "increasing [its] harvest levels in the Northwest to take advantage of strong export markets[.]" (Rayonier Mot. Ex. 6, at 7.)

. . . we are going to set that up a bit, 10% to 15% in the harvest level, driven by the export market to Asia, particularly China." (Rayonier Mot. Ex. 9, at 8.) And, during his September 5, 2012 presentation (cited at Am. Compl. ¶ 161), Mr. Boynton stressed Rayonier's "[f]lexibility to adjust harvest levels and product supply as markets change[.]" (Rayonier Mot. Ex. 19, at 8.)[4] It was only in November 2014, after Mr. Boynton left Rayonier to lead its RYAM spin-off, that Rayonier's new management announced – *for the first time* – its strategic decision to set "the annual sustainable yield" for the Pacific Northwest at 160 MMBF. (Am. Compl. ¶¶ 23, 111.)

A. **Mr. Boynton's Statements**

The Amended Complaint alleges that Mr. Boynton personally made misleading statements on six occasions.[5] The Amended Complaint ignores the fact that, in each of his challenged statements, Mr. Boynton emphasized Rayonier's then-strategy of flexibly managing its harvest in response to market conditions in order to maximize value. For example, during the October 26, 2010 investor conference Mr. Boynton said that "with prices still well below historical levels and domestic saw log demand soft, we will continue to defer approximately 30% of our sustainable harvest levels in 2010 to preserve value." (*Id*.

---

[4] (*See also* Rayonier Mot. Ex. 20, at 3 ("We like [the timber business] because it's very flexible, flexible in how you harvest it, how you grow it, different markets, so it's just a lot of flexibility when we look at our cash flow and our operating income.").)

[5] These occasions are: (1) an October 26, 2010 investor conference call, (2) a January 25, 2011 investor conference call, (3) a February 24, 2011 investor presentation at the Credit Suisse Group Global Paper and Packaging Conference, (4) a June 7, 2011 presentation at the REITWeek Investor Forum, (5) a September 5, 2012 presentation at the Bank of America/Merrill Lynch Industrials & Materials Conference, and (6) the January 24, 2014 "Sustainability Report 2013." (Am. Compl. ¶ 24.) Plaintiffs also attribute to Mr. Boynton alleged misstatements concerning the rotation age range of Rayonier's trees in the Pacific Northwest contained in certain of Rayonier's 10-K filings. (*Id*. ¶¶ 24, 158, 164, 172.) Finally, the Amended Complaint seeks to hold Mr. Boynton liable for alleged misstatements of the merchantable timber inventory in Rayonier's 2013 10-K and April 30, 2014 10-Q because Mr. Boynton signed Sarbanes-Oxley ("SOX") certifications in connection with those filings. (*Id*. ¶¶ 24, 170, 173-74, 176.)

5

¶¶ 46, 141; Rayonier Mot. Ex. 4, at 3.) But plaintiffs omitted the underlined portion of this statement, where Mr. Boynton makes clear that Rayonier's harvest plans were linked to the market price and demand for timber. The Amended Complaint also conveniently omits Mr. Thomas's comment from the same conference, discussed *supra* at 4, that Rayonier would adjust its harvest levels in response to specific market opportunities.

Importantly, the Amended Complaint demonstrates that Mr. Boynton's October 26, 2010 statement that Rayonier had deferred 30% of its sustainable harvest level was in fact *true*. As shown in Figure 1 of the Amended Complaint, in 2008 Rayonier harvested 232 MMBF in the Pacific Northwest and had sustained harvest at or above that level for nearly a decade. (Am. Compl. p. 49.) Rayonier's 2009 and 2010 harvest totals of 166 and 164 MMBF represented an approximately 30% decrease from that level.

Plaintiffs' other allegations concerning Mr. Boynton's statements are similarly flawed. Mr. Boynton's statements are as follows, with the full context included (and the portions plaintiffs omitted underlined):

- **January 25, 2011:** "We are currently securing prices above third quarter 2010 levels. Due to this continued strong export demand, we plan to increase our harvest level 10% to 15% for the year albeit still below our sustainable harvest level." (Rayonier Mot. Ex. 6, at 4 (Am. Compl. ¶¶ 47, 143.)

- **February 24, 2011:** "In the Northwest, yes, we are going to set that up a bit, 10% to 15% in the harvest level, driven by the export market to Asia, particularly China. As you know, our property on the Olympic Peninsula, its proximity to port is great, so we can take advantage of that pricing. But still even having done that, we will still probably be at 70%, 75% of our sustainable harvest level out in the Northwest." (Rayonier Mot. Ex. 9, at 8 (Am. Compl. ¶¶ 49, 147.)

- **June 7, 2011:** "Boynton stated that in the Pacific Northwest 'right now we can defer some harvest because the demand related to US housing creates a lower demand in terms of sawmills, which we will just d[ef]er harvest. And if you defer harvest in our business that is okay because we have a growing asset. It is growing naturally 4% or

6

3139802.1

- 5% annually.'" . . . "Boynton stated that, while the overall timber market was 'relatively soft' at the moment, investors should 'first and foremost' recognize that Rayonier was 'defer[ring] this asset deployment out there for several years and let[ting] it grow . . . naturally at 4 or 5 percent annually.'"  (Am. Compl. ¶¶ 53, 154.)

- **September 5, 2012:**  "We like it because it's very flexible, flexible in how you harvest it, how you grow it, different markets, so it's just a lot of flexibility when we look at our cash flow and our operating income.  And unlike most natural resources, it continues to grow even if you decide you're not going to harvest it at that point in time, you're not going to monetize it, right, so it grows naturally in the forest 4 to 6 to 7% a year just by keeping it there and waiting for the right time to move it out to market."  (Am. Compl. ¶ 161; Rayonier Mot. Ex. 20, at 3.)

Taken as a whole, these statements confirm that Rayonier's harvest practices were flexible and tied to market demand.[6]  With respect to the January 25, February 24, and June 7, 2011 statements, plaintiffs also ignore the facts that:  (1) in 2009 and 2010 Rayonier *did* defer its harvest level in the Pacific Northwest by approximately 30%, and (2) from 2010 to 2011, Rayonier's Pacific Northwest harvest *did* increase by approximately 15% – just as Mr. Boynton said it would – while remaining well below the 245 MMBF average harvest level that Rayonier had sustained for almost a decade.  (*See* Am. Compl. Figure 1.)

The Amended Complaint also retains, verbatim, the same misleading allegations concerning Mr. Boynton's statement in Rayonier's "Sustainability Report 2013" that were in the plaintiffs' original complaint (*compare* Am. Compl. ¶¶ 167-68, *with* Compl. ¶¶ 157-58), even though – as explained at length in Mr. Boynton's original motion to dismiss – those allegations flatly misquote Mr. Boynton.  (*See* Dkt. No. 72, at 11, 16.)

---

[6] Likewise, with respect to the PowerPoint presentation that accompanied Mr. Boynton's September 5, 2012 statement, the Amended Complaint cites only the underlined portion of a bullet about Rayonier's "[h]arvesting of deferred volume in the Pacific Northwest."  (Rayonier Mot. Ex. 19, at 11 (excerpted at Am. Compl. ¶ 161).)  Just as in the original complaint, the Amended Complaint omits other language from the presentation concerning Rayonier's "[f]lexibility to adjust harvest levels and product supply as markets change[.]"  (*Id*. at 8.)

7

3139802.1

B. **Allegations Concerning Mr. Boynton's Alleged Scienter**

The Amended Complaint's only substantive new allegations concerning Mr. Boynton's alleged scienter are the allegations attributed to Larry Davis, "CW5." Plaintiffs allege that, at the time of his statements, Mr. Boynton knew from his participation in Rayonier's Long Range Plan ("LRP") process that Rayonier's harvesting in the Pacific Northwest exceeded its "true sustainable rate" of 160 MMBF. Plaintiffs assert that, between 2007 and 2009, Mr. Davis stated that Mr. Boynton participated in LRP meetings with him and others in which information was presented showing Rayonier's sustainable rate as 160 MMBF and showing Rayonier's Pacific Northwest harvest "dropping off a 'cliff'" in the future. (*See generally* Am. Compl. ¶¶ 4, 81-82, 182.)

As explained at length in Rayonier's motion and Mr. Davis's Declaration, Mr. Davis denies having made the statements upon which these allegations are based, and disagrees with the substance of the allegations. (Rayonier Mot. at 8-9, 14-16.) Notably, Mr. Davis specifically denied "attend[ing] any meeting involving [Mr.] Boynton . . . in which a chart or any other document showed a 'true sustainable rate of 160 MMBF' for the Pacific Northwest." (Davis Decl. ¶ 17.)[7] And although Mr. Davis acknowledged that "on one occasion . . . , [he] saw a five-year harvest projection that showed a decline in the Northwest harvest levels to a range of between 160 to 180 MMBF, to begin approximately in 2008," he emphasized that "***Boynton was not present at that meeting***" which occurred in "around 2006," which was years before Mr. Boynton became Rayonier's Executive Vice President of Forest Resources and Real Estate, let alone its CEO. (*Id.*; Am. Compl. ¶ 23.)

---

[7] "Davis Decl." refers to the Declaration of Larry Davis, attached as Exhibit 1 to Rayonier's motion.

Other than Mr. Davis's disclaimed statements, the Amended Complaint relies on essentially the same, insufficient allegations of Mr. Boynton's purported scienter as the original complaint. Plaintiffs allege that Mr. Boynton "drove the overharvesting through . . . control over Rayonier's financial targets and the Company's annual [LRP];" that the LRP would reflect the amount being "harvested within the current budget year and the estimated sustainable annual cutting;" and that Mr. Boynton received the LRP, was "involved in the LRP process," "attended 'multiple meetings' concerning the LRP," received PowerPoint presentations and other unspecified information concerning harvest levels, and could access Rayonier's timber inventory database. (Am. Compl. ¶¶ 72 – 80, 84, 85, 89, 96-97.) Further, plaintiffs allege it was "common knowledge" among Rayonier employees that the company was overharvesting in the Pacific Northwest. (*Id*. ¶¶ 83, 101, 104.) But none of these allegations suggest that Rayonier's "true sustainable rate" in the Pacific Northwest was 160 MMBF per year or that, at the time he made the challenged statements, Mr. Boynton knew that Rayonier was harvesting above a rate it considered sustainable (or even what time period "sustainable" referred to). Indeed, other than the allegations that Mr. Davis disclaimed, ***there are no allegations in the Amended Complaint concerning the actual content of <u>any</u> harvesting information presented to Mr. Boynton***, and no allegations suggesting that Mr. Boynton was aware of information that was inconsistent with his statements.

## ARGUMENT

### I. PLAINTIFFS AGAIN FAIL TO STATE A SECTION 10(B) CLAIM AGAINST MR. BOYNTON

The Amended Complaint's claim against Mr. Boynton under Section 10(b) the Exchange Act must be dismissed because plaintiffs fail to adequately allege at least two

9

essential elements: (1) they fail to allege that Mr. Boynton made an actionable misstatement, and (2) they fail to plead sufficient facts to give rise to a "strong inference" of Mr. Boynton's scienter. *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1236-38 (11th Cir. 2008).

A. **Mr. Boynton's Alleged Misstatements Are Not Actionable.**

1. *Mr. Boynton's Statements about Harvesting Practices Were Not False.*

A statement cannot be actionable under the securities law unless that statement was actually false or misleading when considered in the context in which it was made. *See generally* 17 C.F.R. § 240.10b-5(b) ("It shall be unlawful for any person . . . [t]o make any ***untrue*** statement . . . or to omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they were made, not misleading"). None of Mr. Boynton's alleged misstatements were false when made; indeed they accurately expressed Rayonier's harvesting practices and strategy at the time.

As explained in detail above, *supra* at 6-7, Mr. Boynton's statements that Rayonier was deferring harvests in the Pacific Northwest, thereby allowing its timber assets to grow (Am. Compl. ¶¶ 46, 47, 49, 53, 141, 143, 147, 154, 161), were entirely true, and Figure 1 of the Amended Complaint demonstrates this. When Rayonier raised its Pacific Northwest harvest by approximately 15% in 2011 – just as Mr. Boynton had said it would – its harvest volume still remained well below the average Pacific Northwest harvest volume that the company had sustained since approximately 2001. (*See supra*, at 7.) Plaintiffs' claim that Mr. Boynton's statements were misleading is thus not plausible due to the "obvious alternative explanation" for his comments. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (Court "may infer from the factual allegations in the

10

complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer").

Plaintiffs' only basis for asserting that Mr. Boynton's statements were misleading is their allegation that Rayonier's "true sustainable rate in the Pacific Northwest was 160 [MMBF] of timber annually." (Am. Compl. ¶ 4.) This argument flatly ignores the portions of Mr. Boynton's statements which made it clear to investors that Rayonier's harvesting strategy emphasized flexibility and responsiveness to market conditions. (*Compare id*. ¶ 161, *with* Ex. 20, at 3 *and* Ex. 19 , at 8.) Moreover, plaintiffs' attempt to retroactively graft new management's 2014 "sustainability" strategy onto Mr. Boynton's statements in 2010-2012 hinges entirely on allegations attributed to Mr. Davis – namely, that Mr. Boynton and others knew by 2010 that the company's true sustainable harvest rate in the Pacific Northwest was 160 MMBF. But despite plaintiffs' assumption that "sustainable" meant "sustainable in perpetuity," nothing in Mr. Boynton's statements specified a time period over which harvest levels would be "sustainable." (Rayonier. Mot. at 23.) And in any event, as explained above and in Rayonier's motion, Mr. Davis has unequivocally denied stating that he *ever* saw a LRP document showing Rayonier's "true sustainable rate" in the Pacific Northwest as 160 MMBF. Nor does he recall a document otherwise showing any "true sustainable rate" for the company's Pacific Northwest harvest. (*See* Davis Decl. ¶ 7.)

2. **Mr. Boynton's Statements in Rayonier's "Sustainability Report" Were Neither False Nor Material.**

Plaintiffs again misquote Mr. Boynton's statement in Rayonier's "Sustainability Report 2013." The Amended Complaint, like the original complaint, asserts that "Boynton personally explained that the Company 'deliver[ed] value to [its] shareholders'

11

by harvesting at a sustainable rate[.]" (Am. Compl. ¶ 63 (alterations in original).) But Mr. Boynton actually said: "[s]ince our founding in 1926, Rayonier has been a thriving forest products company, committed to delivering value to our shareholders through operating our business with the highest ethical standards." (Rayonier Mot. Ex. 26, at 2.)[8]

Even if Mr. Boynton's actual statement were false – which plaintiffs do not even assert – it does not give rise to a securities law violation because it is not a statement of a material fact. *See* 17 C.F.R. § 240.10b-5(b) ("It shall be unlawful for any person . . . [t]o make any untrue statement of a ***material*** fact or to omit to state a ***material*** fact[.]") (emphasis added).[9] Mr. Boynton's statements in "Sustainability Report 2013" describe "delivering value" to Rayonier shareholders, the company's "highest ethical standards," and "sustainability" as a "critical part of the planning horizon for forest investment." (Rayonier Mot. Ex. 26, at 2.) These vague statements are immaterial as a matter of law because they do not assert specific verifiable facts about Rayonier's business. *See Philadelphia Fin. Mgmt. of San Francisco, LLC v. DJSP Enters., Inc.*, 572 F. App'x 713, 716 (11th Cir. 2014) (concluding that statements about the "rigor" of a mortgage foreclosure firm's processes, "the 'efficiency' and 'accuracy' of its operations" were immaterial).

3. ***Mr. Boynton's Statements About Rayonier's Future Harvest Are Non-Actionable Forward-Looking Statements.***

Finally, as explained in Rayonier's motion (Rayonier Mot. at 24-29), Mr. Boynton's statements about Rayonier's expected deferral of its Pacific Northwest harvest

---

[8] With respect to Mr. Boynton's comment that "[w]ith harvest cycles that can stretch as long as 60 years, sustainability has always been a critical part of the planning horizon for forest investment" (Am. Compl. ¶ 167), plaintiffs never allege that ***Rayonier's company-wide harvest cycles*** did not stretch up to 60 years.

[9] *See also In re Royal Caribbean Cruises Ltd. Sec. Litig.*, No. 1:11–22855–CIV, 2013 WL 3295951, at *12 (S.D. Fla. Apr. 19, 2013) ("A statement that is vague, generalized, or mere corporate puffery is immaterial because a reasonable investor would not base a decision on such statements.").

levels and its anticipated increase of those levels are non-actionable forward-looking statements. Mr. Boynton adopts the arguments asserted in Rayonier's motion in full.

B. **Plaintiffs Fail to Allege a "Strong Inference" of Mr. Boynton's Scienter.**

Plaintiffs must plead sufficient facts to give rise to a "strong inference" of each defendant's scienter with respect to each alleged violation. *See City of St. Clair Shores Gen. Emps. Ret. Sys. v. Lender Processing Servs., Inc.*, No. 3:10-cv-1073-J-32JBT, 2012 WL 1080953, at *4 (M.D. Fla. Mar. 30, 2012) (Corrigan, J.). "[A] 'strong inference' of scienter means an inference that is 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Mizzaro*, 544 F.3d at 1238 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)). The allegations in the Amended Complaint fall well short of this standard.

Plaintiffs' allegations concerning Mr. Boynton's scienter depend on the claim that, during the Class Period and as part of Rayonier's LRP process, Mr. Boynton saw information that Rayonier's "true sustainable rate" in the Pacific Northwest was 160 MMBF per year and yet told the market that Rayonier was harvesting below its sustainable level, even though its harvest volumes exceeded 160 MMBF. (Am. Compl. ¶ 182.) The only basis for this claim is the statements attributed to CW5. (*See id.* ¶¶ 4, 82.) Because Mr. Davis has disclaimed allegations attributed to him – specifically the statements that the LRP documents showed Rayonier's "true sustainable rate" to be 160 MMBF and that he attended a meeting where Mr. Boynton saw any of these documents (Davis Decl. ¶¶ 7, 17) – the Amended Complaint fails to support an inference of Mr. Boynton's scienter that is "cogent and at least

13

as compelling as [the] opposing inference." *See Campo v. Sears Holding Corp.*, 371 F. App'x 212, 217 (2d Cir. 2010).

Significantly, other than the statements improperly attributed to Mr. Davis, there are no allegations in the Amended Complaint suggesting that Mr. Boynton or Rayonier viewed 160 MMBF as the "sustainable" annual harvest level at any time prior to new management's adoption of that metric in November 2014.[10] Nor are there any other allegations that describe a comment made by Mr. Boynton or detail the "***actual contents*** of contemporaneous internal reports that contradict or cast doubt on [Mr. Boynton's] public statements." *Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1220 (M.D. Fla. 2014). The other allegations in the Amended Complaint only describe, in vague terms, Mr. Boynton's participation in the LRP process, his receipt of certain reports, and his access to certain information. (*See* Am. Compl. ¶¶ 72 – 80, 84, 85, 89, 93, 96-97.) But plaintiffs never describe what those reports or information showed about Rayonier's harvesting practices or allege that Mr. Boynton ever actually accessed Rayonier's timber inventory database.[11] Plaintiffs also never explain what, if any, information Mr. Boynton saw that contradicted his contemporaneous statements. These allegations are insufficiently particularized to give rise

---

[10] Mr. Davis's acknowledgment that "on one occasion, around 2006, [he] saw a five-year harvest projection that showed a decline in the Northwest harvest levels to a range of between 160 to 180 MMBF, to begin approximately in 2008" is not to the contrary. (Davis Decl. ¶ 17.) First, Mr. Davis noted that Mr. "Boynton was not present at that meeting," which was years before Mr. Boynton made the challenged statements. (*Id*.) In 2006 Mr. Boynton had not yet become Rayonier's Executive Vice President of Forest Resources and Real Estate, and, thus, would not necessarily have had occasion to review Rayonier's five-year harvest projection. (Am. Compl. ¶ 23.) Additionally, Mr. Davis's recollection aligns with Rayonier's actual deferral of harvest volumes after 2008 and with Mr. Boynton's descriptions in his statements between 2010 and 2012. Finally, at no time does Mr. Davis suggest that the 160 to 180 MMBF range was Rayonier's sustainable rate.

[11] Moreover, although plaintiffs seek to hold Mr. Boynton liable for alleged misstatements in Rayonier's 2011-2013 10-Ks about the rotation age range of Rayonier's trees in the Pacific Northwest (Am. Compl. ¶¶ 158, 164, 172), the Amended Complaint does not allege that Mr. Boynton was "particularly aware of the ages of Rayonier's timber, . . . the Company's deliberate transition to logging younger timber[,]" or "Rayonier's timberland holdings by age class." (*Id*. ¶ 102.)

14

3139802.1

to a strong inference of scienter. *See FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1303 (11th Cir. 2011) ("Without any allegations that the Defendants could and did access the 'Interface' system before March 2004, and indicating what they would have seen had they done so, it is impossible to draw the requisite 'strong inference' of scienter.").

Plaintiffs' other allegations of Mr. Boynton's scienter –that it was "common knowledge" that Rayonier engaged in overharvesting; that Rayonier's new management quickly uncovered the purported fraud; and that Mr. Boynton received performance-based compensation (Am. Compl. ¶¶ 101, 185, 188, 190) – are all insufficient to support a strong inference of Mr. Boynton's scienter for the reasons stated in Rayonier's motion. (Rayonier Mot. at 16-22.) Plaintiffs also continue to allege that Mr. Boynton is liable in connection with Rayonier's alleged overstatement of its merchantable timber inventory in its 2013 10-K and its April 2014 10-Q merely because Mr. Boynton signed those filings and the incorporated SOX certifications. (Am. Compl. ¶¶ 24, 170, 173-74, 176.) These allegations, too, fail for the reasons explained in Rayonier's motion. (Rayonier Mot. at 34-35.)

Accordingly, plaintiffs do not and cannot state a claim against Mr. Boynton under Section 10(b).[12]

## CONCLUSION

For the foregoing reasons, the Court should dismiss the claims in the Amended Complaint asserted against Mr. Boynton with prejudice.

---

[12] Plaintiffs' claim against Mr. Boynton under Section 20(a) of the Exchange Act (Am. Compl. ¶¶ 218-223) must also be dismissed because, for the reasons discussed above, the Amended Complaint does not sufficiently plead a primary violation of Section 10(b). *See Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 635-36 (11th Cir. 2010).

15

Dated:   Jacksonville, Florida
         October 26, 2015

                                                              Respectfully Submitted,

                                                              FRIEDMAN KAPLAN SEILER &
                                                                ADELMAN LLP

                                                                   s/ *Jeffrey R. Wang*
                                                             Jeffrey R. Wang (admitted *pro hac vice*)
                                                             7 Times Square
                                                             New York, NY  10036-6516
                                                             (212) 833-1100 (tel.)
                                                             (212) 833-1250 (fax.)
                                                             jwang@fklaw.com
                                                             Trial Counsel

                                                             *- and -*

                                                             FOLEY & LARDNER LLP
                                                             Christopher Ryan Maloney
                                                             FL Bar No. 0652903
                                                             1 Independent Drive - Suite 1300
                                                             PO Box 240
                                                             Jacksonville, FL 32202-0240
                                                             (904) 359-2000 (tel.)
                                                             (904) 359 8700 (fax)
                                                             cmaloney@foley.com

                                                             *Attorneys for Defendant Paul G. Boynton*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on October 26, 2015, I electronically filed the foregoing Defendant Paul G. Boynton's Motion to Dismiss the Amended Consolidated Class Action Complaint and Incorporated Memorandum of Law with the Clerk of the Court using CM/ECF, which will deliver the document to all counsel of record who have appeared in the action.

                                      s/ *Jeffrey R. Wang*
                                      Jeffrey R. Wang
                                      Attorney for Defendant Paul G. Boynton