# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

|  |  |
|---|---|
| IN RE RAYONIER INC. SECURITIES LITIGATION | Case No. 3:14-cv-1395-TJC-JBT<br><br>CLASS ACTION |

**LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
THE PROPOSED SETTLEMENT, THE PLAN OF ALLOCATION,
AND LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES
AND EXPENSES, AND INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii-vii

MOTION ................................................................................................................... 1

MEMORANDUM OF LAW ................................................................................... 1

I.      PRELIMINARY STATEMENT ................................................................... 1

II.     THE PROPOSED SETTLEMENT MERITS APPROVAL BY THE
        COURT .............................................................................................................. 3

        A.      The Settlement Satisfies The Threshold  Consideration Of Good
                Faith, Arm's-Length Negotiations .............................................................. 4

        B.      Application Of The *Bennett* Factors Supports Approval Of The
                Settlement ........................................................................................................ 4

                1.      Likelihood Of Success At Trial Supports Final Approval .......................... 4

                2.      Considering The Range Of Possible Recoveries, The
                        Settlement Amount Is Clearly Within The Range Of
                        Reasonableness ................................................................................. 7

                3.      The Complexity, Expense And Likely Duration Of
                        Continued Litigation Support Approval Of The Settlement ..................... 8

                4.      The Reaction Of The Settlement Class ........................................................ 9

                5.      The Stage Of The Proceedings Strongly Supports Final
                        Approval ............................................................................................ 9

        C.      The Recommendations Of Experienced Counsel  And Lead
                Plaintiffs Heavily Favor Approval Of The Settlement ......................... 10

III.    THE PLAN OF ALLOCATION WARRANTS APPROVAL ........................ 11

IV.     NOTICE TO THE CLASS SATISFIED RULE 23 AND DUE PROCESS .... 12

V.      LEAD COUNSELS' FEE AND EXPENSE REQUEST IS FAIR AND
        REASONABLE ................................................................................................ 13

        A.      In The Eleventh Circuit, A Reasonable Percentage Of The
                Recovery Is The Appropriate Method For Awarding Attorneys'
                Fees ................................................................................................................ 14

        B.      The *Camden* Factors Confirm That The Fee Request Is Fair And
                Reasonable ..................................................................................................... 14

                1.      The Time And Labor Required ...................................................... 15

2.      The Novelty And Difficulty Of The Issues..................................... 16

3.      The Skill, Experience, Reputation And Ability Of The
        Attorneys.................................................................................... 18

4.      The Preclusion Of Other Employment ...................................... 18

5.      The Customary And Contingent Nature Of The Fee ............... 19

6.      The Amount Involved And Results Achieved ........................... 20

7.      The Undesirability Of The Action: No One Else Sought To
        Lead............................................................................................ 20

8.      The Reaction Of The Settlement Class..................................... 21

C.      The Requested Fee Is Fair And Reasonable Compared To Similar
        Actions .............................................................................................. 21

D.      Lead Plaintiffs' Endorsement Of The Requested Fee Supports Its
        Approval ............................................................................................ 23

E.      Lead Counsel's Expense Reimbursement Request Is Fair And
        Reasonable ........................................................................................ 24

F.      Lead Plaintiffs' Request For Reimbursement Of Costs Directly
        Related To Their Representation Of The Settlement Class Is Fair
        And Reasonable ................................................................................ 25

VI.     CONCLUSION......................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................13

*In re Aetna Inc. Sec. Litig.*,
  No. CIV. A. MDL 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ........................................23

*In re Airline Ticket Comm'n Antitrust Litig.*,
  953 F. Supp. 280 (D. Minn. 1997) ......................................................23

*Allapattah Servs., Inc. v. Exxon Corp.*,
  454 F. Supp. 2d 1185 (S.D. Fla. 2006) ...........................................14, 22

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)....................................7, 20

*Behrens v. Wometko Enters.*,
  118 F.R.D. 534 (S.D. Fla. 1988) ...............................................10, 19

*In re BellSouth Corp. Sec. Litig.*,
  1:02-cv-2142-WSD, 2007 U.S. Dist. LEXIS 98429 (N.D. Ga. Apr. 9, 2007) .......................22

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) .........................................................3

*In re Bisys, Inc. Sec. Litig.*,
  No. 04 Civ. 3840 (JSR), 2007 WL 2049726 (S.D.N.Y. July 16, 2007) .................................23

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980).......................................................................14

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ..................................................... *passim*

*Canupp v. Sheldon*,
  No. 04-cv-260-FTM, 2009 WL 4042928 (M.D. Fla. Nov. 23, 2009) ........................................4

*In re Carter's, Inc. Sec. Litig.*,
  No. 08-cv-2940-AT, 2012 WL 12877943 (N.D. Ga. May 31, 2012)......................................24

*In re Checking Account Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) .........................................4, 5, 8

*In re Chicken Antitrust Litig. Am. Poultry*,
   669 F.2d 228 (5th Cir. 1982) ............................................11

*In re China Sunergy Sec. Litig.*,
   No. 07-Civ. 7895-DAB, 2011 WL 1899715 (S.D.N.Y. May 13, 2011)...................................8

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ............................................4, 10

*David v. Am. Suzuki Motor Corp.*,
   No. 08-CV-22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) ..........................18

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)............................................12

*In re Friedman's Inc. Sec. Litig.*,
   No. 03-cv-3475-WSD, 2009 WL 1456698 (N.D. Ga. May 22, 2009) ............................19, 20

*Garst v. Franklin Life Ins. Co.*,
   No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666 (N.D. Ala. June 25, 1999) ...................7, 10

*In re Gen. Instrument Sec. Litig.*,
   209 F. Supp. 2d 423 (E.D. Pa. 2001) ............................................23

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ............................................16

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ............................................11

*Gutter v. E.I. Dupont De Nemours & Co.*,
   No. 95-cv-2152, 2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May 30, 2003)............................22

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   No. 12-Civ-8557-CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ...................11

*Holman v. Student Loan Xpress, Inc.*,
   No. 08-cv-305-SDM, 2009 WL 4015573 (M.D. Fla. Nov. 19, 2009)......................4

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)............................................16

*Ingram v. Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001)............................................16

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009)............................................23

*Johnson v. Georgia Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) ................................................15

*Jones v. Diamond*,
   636 F.2d 1364 (5th Cir. 1981) ..............................................19

*Kurzweil v. Philip Morris Cos., Inc.*,
   Nos. 94-cv-2373, 94-cv-2546, 1999 WL 1076105 (S.D.N.Y. Nov. 30, 1999)......................23

*In re Linerboard Antitrust Litig.*,
   No. MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) ..................................23

*Leverso v. SouthTrust Bank of Ala., N.A.*,
   18 F.3d 1527 (11th Cir. 1994) ..............................................3

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
   762 F.3d 1248 (11th Cir. 2014) ..............................................23

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
   *No. 2:10-CV-02847-KOB*,
   2015 WL 5626414 (N.D. Ala. Sept. 14, 2015) ..............................22, 25

*Mashburn v. Nat'l Healthcare, Inc.*,
   684 F. Supp. 679 (M.D. Ala. 1988) ..............................................16

*In re The Mills Corp. Sec. Litig.*,
   265 F.R.D. 246 (E.D. Va. 2009) ..............................................23

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970)..............................................14

*Mosser v. TD Bank, N.A.*,
   MDL No. 2036, 2013 U.S. Dist. LEXIS 187627 (S.D. Fla. Mar. 18, 2013) .........................22

*Nichols v. Smithkline Beecham Corp.*,
   No. 00-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005)......................................23

*Norman v. Hous. Auth. of Montgomery*,
   836 F.2d 1292 (11th Cir. 1988) ..............................................19

*In re NU Skin Enters., Inc.*,
   No. 14-cv-00033, 2016 WL 6916486 (D. Utah Oct. 13, 2016)............................24

*Perez v. Asurion Corp.*,
   501 F. Supp. 2d 1360 (S.D. Fla. 2007) ..............................................10

*Pinto v. Princess Cruise Lines, Ltd.*,
   513 F. Supp. 2d 1334 (S.D. Fla. 2007) ..............................................16, 19, 21

*In re Priceline.com, Inc. Sec. Litig.*,
No. 00-cv-1884-AVC, 2007 WL 2115592 (D. Conn. July 20, 2007) ..............................14, 23

*In re Prison Realty Sec. Litig.*,
No. 99-0458, 2001 U.S. Dist. LEXIS 21942 (M.D. Tenn. Feb. 9, 2001)...............................23

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. Sept. 28, 2005)..............................................................................23

*Ressler v. Jacobson*,
149 F.R.D. 651 (M.D. Fla. 1992)................................................................................ *passim*

*Ressler v. Jacobson*,
822 F. Supp. 1551 (M.D. Fla. 1992)......................................................................................6

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ...........................................................................................20

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
MDL No. 2343, 2014 WL 2946459 (E.D. Tenn. June 30, 2014)...........................................23

*In re Sterling Fin. Corp. Sec. Class Action*,
No. Civ. 07-2171, MDL No. 1879, 2009 WL 2914363 (E.D. Pa. Sept. 10, 2009) ................16

*Strube v. Am. Equity Inv. Life Ins. Co.*,
226 F.R.D. 688 (M.D. Fla. 2005)....................................................................................5, 10

*In re Sunbeam Sec. Litig.*,
176 F. Supp. 2d 1323 (S.D. Fla. 2001) ...............................................................7, 10, 18, 20

*In re Terazosin Hydrochloride Antitrust Litig.*,
No. 99-md-1317, 2005 U.S. Dist. LEXIS 43082 (S.D. Fla. Apr. 19, 2005).........................22

*Thorpe v. Walter Inv. Mgmt. Corp.*,
No. 14-cv-20880, 2016 U.S. Dist. LEXIS 144133 (S.D. Fla. Oct. 14, 2016) ................ *passim*

*In re Vitamins Antitrust Litig.*,
No. 99-197, 2001 WL 34312839 (D.D.C. July 16, 2001) .....................................................23

*Wal-Mart Stores, Inc. v. Visa U.S.A.*,
396 F.3d 96 (2d Cir. 2005)..................................................................................................13

*Waters v. Int'l Precious Metals Corp.*,
190 F.3d 1291 (11th Cir. 1999) .....................................................................................16, 22

*Yang v. Focus Media Holding Ltd.*,
No. 11-Civ. 9051 (CM), 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)..................................11

*Zuckerman v. Smart Choice Auto. Grp., Inc.*,
No. 99-cv-237-ORL28KRS, 2001 WL 686879 (M.D. Fla. May 3, 2001) ...............................6

**Statutes, Rules & Regulations**

1 Alba Conte, *Attorney Fee Awards*, § 2.19 (3d ed. 2006)...........................................................24

15 U.S.C. § 78u-4(a)(4) .........................................................................................................1, 25

Cornerstone Research, *Securities Class Action Settlements, 2016 Review and Analysis* (2017) .........................................................................................................................8

Fed. R. Civ. P. 23...........................................................................................................1, 3, 12, 13

Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2016 Full-Year Review* (2017)...............................................................................7

## MOTION

Lead Plaintiffs, the Pension Trust Fund For Operating Engineers ("Operating Engineers") and the Lake Worth Firefighters' Pension Trust Fund ("Lake Worth"), move pursuant to Fed. R. Civ. P. 23 for final approval of (i) the proposed Settlement of the above-captioned securities class action (the "Action"); (ii) the proposed Plan of Allocation; and (iii) Lead Counsel's request for attorneys' fees and reimbursement of Litigation Expenses, as well as Lead Plaintiffs' costs pursuant to 15 U.S.C. § 78u-4(a)(4) for their representation of the Settlement Class.[1]

## MEMORANDUM OF LAW

## I.   PRELIMINARY STATEMENT

After years of hard-fought litigation, Lead Plaintiffs have agreed to settle this Action for a cash payment of $73 million.  While courts have uniformly recognized that securities class actions are notoriously complex and risky, this case was uniquely so, and final approval of the Settlement is particularly appropriate in light of these notable factors:

The Settlement Is Exceptional: The proposed Settlement represents the *second largest* securities class action recovery ever obtained in this District, is one of the largest such settlements within the entire 11th Circuit, is nearly *nine times* the national median of $8.3 million, and secures a recovery of at least 20.8% of estimated aggregate Class-wide damages—dwarfing the median 2.6% recovery in similarly-sized securities class actions.  ¶78.

The Unique Risks and Difficulties of the Action: Indicative of the unique risks of the Action, Lead Plaintiffs were the only shareholders who sought to represent the Class at the Lead Plaintiff stage.  The Court initially dismissed the Action in its entirety, and even in denying

---

[1] Unless otherwise stated, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement, dated April 12, 2017 (ECF No. 146-2), or the accompanying Joint Declaration of David R. Stickney and Joseph E. White, III (the "Joint Declaration" or "Joint Decl."). "¶" references are to the Joint Declaration.

Defendants' second round of motions to dismiss, the Court "expresse[d] no view of the ultimate merit of Lead Plaintiffs' claims" and noted that "the Court is skeptical regarding the viability of the allegations about merchantable timber inventory." ECF No. 102 at 3. The SEC conducted a full-scale investigation, including the review of Rayonier documents and depositions of executives, and yet ultimately chose not to pursue an enforcement action, further highlighting how difficult these claims were to prosecute. Indeed, throughout this litigation, Defendants set forth numerous credible arguments on liability and damages that posed a significant risk of a lesser or no recovery if the litigation continued. ¶¶53-68. In the face of these obstacles, Lead Plaintiffs and Lead Counsel remained steadfast in pursuit of their claims, ultimately securing a remarkable recovery of $73 million on behalf of the Settlement Class.

Extensive Litigation Efforts: The Settlement is the product of years of diligent and complex work by Lead Plaintiffs and Lead Counsel, including an extensive investigation that involved contacting more than 90 potential witnesses; consulting with experts in specialized areas of forestry, accounting and damages; preparing two detailed amended complaints and opposing two rounds of motions to dismiss; preparing for multiple oral arguments; reviewing 1.58 million pages of relevant documents; and conducting extensive discovery, including class certification related depositions, thereby gaining an in-depth knowledge of the Action. ¶¶13-52.

Unanimous Class-Wide Support: While the deadline for objections has not passed, the Settlement Class to date has unanimously approved of the Settlement, the Plan of Allocation and the requested fees and expenses, and Lead Plaintiffs also endorse this motion. ¶¶11, 87, 125. Notably, the Settlement Class consists of approximately 80% institutional investors.

Arm's-Length Settlement Negotiations: The Settlement is the product of the Parties' extensive, arm's-length negotiations. Significantly, Lead Plaintiffs rejected opportunities to settle

the case after the Court initially dismissed the Action in its entirety, and instead pressed on with their litigation efforts. Those efforts culminated in an intensive second mediation process overseen by the Honorable Layn R. Phillips, a former federal judge and renowned mediator.

In sum, the Settlement easily satisfies every relevant standard for final approval under Fed. R. Civ. P. Rule 23, and is more than "fair, adequate and reasonable" under controlling 11th Circuit precedent. The Plan of Allocation is likewise a fair and reasonable method of distributing the Settlement proceeds to Settlement Class Members.

Moreover, as detailed below, the fee request of one-third of the Settlement Fund is reasonable and fully supported by all *Camden* factors. Considering the substantial risks of the litigation, the exceptional result, the devotion of time and resources on the part of Lead Counsel, and the additional factors, the request reflects a reasonable upward adjustment from the benchmark of 30%. The request is also similar to awards in comparable cases both in the 11th Circuit and nationwide.

Accordingly, Lead Plaintiffs respectfully ask this Court to approve the Settlement, the Plan of Allocation, and Lead Counsel's request for attorneys' fees and expenses.

## II.    THE PROPOSED SETTLEMENT MERITS APPROVAL BY THE COURT

In determining whether to approve a class action settlement under Rule 23(e), the Court considers whether it is "fair, adequate, reasonable and not the product of collusion." *Leverso v. SouthTrust Bank of Ala., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994). The Eleventh Circuit has held that the following factors should be considered in evaluating a class action settlement:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984). In evaluating a proposed settlement,

the Court "is entitled to rely on the judgment of experienced counsel for the parties." *Canupp v. Sheldon*, No. 04-cv-260-FTM, 2009 WL 4042928, at *5 (M.D. Fla. Nov. 23, 2009).  The Court "will not substitute its business judgment for that of the parties; [instead] 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011); *see also Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel").

### A.    The Settlement Satisfies The Threshold Consideration Of Good Faith, Arm's-Length Negotiations

Here, the record is clear that the Settlement is the product of extended arm's-length negotiations between experienced counsel, including two mediation sessions, the second of which was conducted under the auspices of Judge Phillips, a highly respected and experienced mediator. Judge Phillips found that settlement negotiations before him were "extremely hard-fought" and were "completely at arm's-length, and fully conducted in good faith," and that "the advocacy on both sides of the case was outstanding."[2]  Thus, the Settlement negotiation process demonstrates beyond question that there was no fraud or collusion.  *See Holman v. Student Loan Xpress, Inc.*, No. 08-cv-305-SDM, 2009 WL 4015573, at *5 (M.D. Fla. Nov. 19, 2009) (finding "no apparent fraud or collusion" where a "settlement [was] the product of . . . an arm's-length, 'protracted and contentious' negotiation with a mediator").

### B.    Application Of The *Bennett* Factors Supports Approval Of The Settlement

#### 1.    Likelihood Of Success At Trial Supports Final Approval

In assessing the first *Bennett* factor, "the Court can limit its inquiry to determining 'whether

---

[2] *See* Declaration of Hon. Layn R. Phillips (Fmr.) in Support of Approval of Class Action Settlement (Ex. 3 to the Joint Decl.) ("Phillips Decl."), at ¶¶7-17.

the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of settlement.'"[3]  Here, the Court initially dismissed this Action in its entirety, and even in denying Defendants' second motions to dismiss, the Court remained "skeptical regarding the viability of the allegations about merchantable timber inventory" (ECF No. 102 at 3 n.2).  These claims were meaningful because they were the only allegations that were implicated in Rayonier's restatement of its financial results; they were not subject to a "puffery" defense; and they otherwise provided support for Lead Plaintiffs' evidence of scienter.

In addition, the other category of misstatements – the "sustainability" of Rayonier's harvesting practices – carried inherent risks because Defendants set forth several credible arguments challenging the viability of these claims.  For instance, Defendants argued that these statements were immaterial corporate "puffery," and that investors did not rely upon them.  Moreover, Defendants argued that the term "sustainable" did not have a single industry definition, rather the term was subject to interpretation that could vary from person to person and context to context, and that the Company's decision to reduce its harvesting in the future was the result of a change in business strategy implemented by new Rayonier management, which focused less on the timberland acquisition strategy under which prior management operated.

Defendants further argued that Lead Plaintiffs would be unable to establish scienter.  Indeed, Defendants noted that Lead Plaintiffs alleged an inaccurate rate of sustainability for Rayonier's operations during the Class Period, and failed to allege knowledge on the part of the Individual Defendants that they were, in fact, harvesting above such level.  Given these contentions, as well as the fact that there was no unusual insider selling, Lead Plaintiffs faced a

---

[3] *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697-98 (M.D. Fla. 2005); *see also Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1345 (court need not determine if the settlement "is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial.").

risk that a jury could find that Defendants did not act with any fraudulent intent.  Defendants' arguments were further supported by the SEC's decision not to bring an enforcement action after a thorough investigation, allowing Defendants to argue that the SEC did not believe that the Defendants made any false statements, acted with scienter, or violated the securities laws.

Further, the Parties vigorously disputed the range of potential damages.  Defendants believed that Lead Plaintiffs could not show whether and by how much Defendants' alleged misstatements affected Rayonier's stock price.  For instance, Defendants argued in their class certification opposition that the decline in Rayonier's stock price was not the result of the alleged corrective disclosures, but rather was the result of other news unrelated to the alleged fraud, including a cut in Rayonier's dividend, weakened Asian and export demand, reduced harvesting in the Company's southern timberland, and a discontinuation of non-strategic timberland sales. Defendants argued that Lead Plaintiffs failed to "disaggregate" the impact of this non-fraud information.  ¶¶62-63.  Defendants also argued that Lead Plaintiffs could not recover any damages from Rayonier's stock price decline on November 11, 2014, because there was no new information released that day, and under the fraud-on-the-market theory, Lead Plaintiffs could not recover as a matter of law for the decline that occurred that day.  ¶62.  Even if Lead Plaintiffs' experts survived *Daubert* motions, these issues would no doubt be vigorously contested at trial in a highly contentious "battle of the experts" that could result in a jury finding of no damages or only a fraction of the amount of damages Lead Plaintiffs contend.  ¶¶64-65.[4]

While Lead Plaintiffs believe that they would successfully overcome Defendants' assertions, there is no question that these were credible arguments that could have been accepted

---

[4] *See, e.g., Zuckerman v. Smart Choice Auto. Grp., Inc.*, No. 99-cv-237-ORL28KRS, 2001 WL 686879, at *10 (M.D. Fla. May 3, 2001) ("The determination of damages . . . is a complicated and uncertain process, typically involving conflicting expert opinions."); *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) ("In the 'battle of experts,' it is impossible to predict with any certainty which arguments would find favor with the jury.").

by the Court at summary judgment or the jury at trial.  Moreover, Defendants would likely have appealed any adverse judgment, leading to many additional years of continued litigation, thereby exposing the Class to the continued risk of a judgment reduction or even a complete reversal.[5]

### 2.   Considering The Range Of Possible Recoveries, The Settlement Amount Is Clearly Within The Range Of Reasonableness

"The second and third factors in the Eleventh Circuit's *Bennett* analysis call for the Court to determine 'the possible range of recovery' and then ascertain where within that range 'fair, adequate, and reasonable settlements lie.'" *Garst v. Franklin Life Ins. Co.*, No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666, at *64 (N.D. Ala. June 25, 1999); *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1331 (S.D. Fla. 2001) (these factors "are easily combined").

According to a recent study, the median settlement in securities class actions between 1996 and 2016 was just 2.6% percent of "investor losses" in cases where the maximum losses were between $200 million and $399 million.[6]  Had Lead Plaintiffs overcome all of the liability and loss causation risks discussed above, Lead Counsel's expert estimates that the Settlement Class's maximum per-share damages at trial are between $5.92 and $7.21, and that aggregate damages total approximately $350 million under certain trading assumptions.  As set forth above, Defendants had strong arguments that, even assuming Plaintiffs were successful in establishing liability at trial, damages were well below $100 million.  Accordingly, the Settlement represents a recovery of approximately 20.8% of Plaintiffs' estimated aggregate damages, and a substantially greater percentage of Defendants' estimated damages.  ¶¶76-77.

Importantly, when considering the significant liability and loss causation risks discussed

---

[5] *See, e.g.*, *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV, 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) (overturning plaintiff class jury verdict and granting judgment as a matter of law in favor of defendants).

[6] *See* Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2016 Full-Year Review* (2017), at 36 (Joint Decl. Ex. 12).

above, which could have easily reduced damages to an amount less than the Settlement Amount, or even to zero, the Settlement is at the high end of any "range of reasonableness." Indeed, courts routinely approve class action settlements representing significantly lower percentages of recoverable damages. *See, e.g.*, *Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1344-45 (finding that settlement providing 9% of class's potential recovery was reasonable); *In re China Sunergy Sec. Litig.*, No. 07-Civ. 7895-DAB, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (finding that settlements in the range of 3% to 7% of estimated losses in securities cases are common and reasonable).

The $73 million Settlement is also substantially larger in absolute terms than the typical securities class action settlement, including far above the inflation-adjusted median of $8.3 million. In fact, 79% of post-PSLRA settlements have settled for $25 million or less.[7]

### 3.    The Complexity, Expense And Likely Duration Of Continued Litigation Support Approval Of The Settlement

This Action has been challenging and complex given the complicated facts and law at issue in the litigation. Moreover, based on the volume of evidence obtained and reviewed (including over 1.58 million pages of documents), the complexity of the issues involved, and the tenacity of Defendants and their counsel, Lead Plaintiffs reasonably expected that the continued prosecution of the Action through the completion of discovery, summary judgment, and trial would have involved substantial additional work and expense by counsel and this Court.

To obtain a judgment at trial, assuming Lead Plaintiffs had prevailed at the class certification stage, Lead Plaintiffs would need to complete fact and expert discovery, including taking numerous depositions of Rayonier employees, the Individual Defendants, and other fact

---

[7] *See* Cornerstone Research, *Securities Class Action Settlements, 2016 Review and Analysis* (2017) (Joint Decl. Ex. 11) at 1, fig. 1, and 5.

witnesses, and preparing and exchanging expert reports on issues such as damages, forestry and accounting.  Lead Plaintiffs would also need to brief the inevitable summary judgment and *Daubert* motions and other pre-trial motions.  Trial would be complex and expensive, requiring significant factual and expert testimony to prove the elements of Lead Plaintiffs' claims, including falsity, materiality, scienter and loss causation.  Even after these protracted and expensive efforts, the Class might obtain a result inferior to the Settlement recovery.  ¶¶65-66.

Furthermore, even a jury verdict would not guarantee the recovery of damages for the Class that this $73 million cash recovery does.  Defendants would undoubtedly appeal any favorable verdict, and the appellate process could last several years, with no assurance of a sustained favorable outcome for the Class.

### 4.    The Reaction Of The Settlement Class

The positive reaction of class members, and the absence of substantial objections, "is strong evidence of the propriety and acceptability of that request."  *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992). The Court-ordered deadline for submitting objections and requests for exclusions is August 18, 2017.  *See* Notice ¶¶58, 64.  To date, no objections to the Settlement have been received, and only a handful of shareholders have requested exclusion from the Settlement Class.[8]  Lead Plaintiffs will file reply papers on September 1, 2017, after the exclusion and objection deadline has passed, to address this factor.

### 5.    The Stage Of The Proceedings Strongly Supports Final Approval

In assessing the stage of the proceedings at which a settlement is achieved, "[t]he relevant inquiry is whether the parties have conducted sufficient discovery to assess the strengths and

---

[8] *See* Declaration of Stephanie A. Thurin Regarding (A) Mailing of Notice And Claim Form; (B) Publication of Summary Notice; and (C) Report on Requests for Exclusion Received to Date ("Thurin Decl."), attached to the Joint Decl. as Exhibit 4, at ¶11.

weaknesses of their claims and defenses."[9]  Here, the Settlement was reached after two and a half years of hard-fought litigation, and after Lead Plaintiffs conducted extensive fact and expert discovery, including reviewing over 1.58 million pages of relevant documents.  ¶¶7, 20-49.  Lead Plaintiffs also opposed two rounds of contentious motions to dismiss; prepared and filed a motion for class certification, which included a detailed expert report from Lead Plaintiffs' market efficiency expert and deposition testimony; consulted extensively with experts and participated in extended settlement negotiations.  ¶¶13-19, 39-52, 69-74.  In sum, by the time the Settlement was reached, each side had sufficient information to assess the strengths and weaknesses of its claims, and "was well aware of the other side's position and the merits thereof."  *Sunbeam*, 176 F. Supp. 2d at 1332.

### C.   The Recommendations Of Experienced Counsel And Lead Plaintiffs Heavily Favor Approval Of The Settlement

In determining whether the proposed Settlement is fair, reasonable and adequate, the Court may rely on the judgment of counsel and, indeed, "should be hesitant to substitute its own judgment for that of counsel."  *Cotton*, 559 F.2d at 1330; *accord Perez*, 501 F. Supp. 2d at 1380; *Strube*, 226 F.R.D. at 703.  Here, Lead Counsel are highly experienced in litigation of this type, are well-informed about the strengths and weaknesses of this case following years of litigation, and strongly endorse the Settlement and believe that it represents an excellent recovery for the Settlement Class. ¶67.

Moreover, Lead Plaintiffs, which are sophisticated institutional investors that communicated regularly with Lead Counsel and were kept informed about the progress of the

---

[9] *Garst*, 1999 U.S. Dist. LEXIS 22666, at *69-70; *see Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1383 (S.D. Fla. 2007) (approval supported where plaintiffs had "access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation."); *accord Behrens v. Wometko Enters.*, 118 F.R.D. 534, 544 (S.D. Fla. 1988).

mediations and other settlement negotiations, have endorsed the Settlement.[10]  The endorsement

of a settlement by Lead Plaintiffs that have played an active role in the litigation, including

testifying as class representatives and participating in the settlement process, provides additional

support for the Settlement's fairness.  *See, e.g.*, *In re Global Crossing Sec. & ERISA Litig.*, 225

F.R.D. 436, 462 (S.D.N.Y. 2004) (participation of sophisticated institutional investor lead

plaintiffs supported approval of the settlement).

Accordingly, under all of the relevant factors, the Settlement represents an excellent

recovery that is, in all respects, "fair, adequate and reasonable" and should be finally approved.

## III.   THE PLAN OF ALLOCATION WARRANTS APPROVAL

The objective of a plan of allocation is to provide an equitable method for distributing a

settlement fund among eligible class members.  The standard for approval of a plan of allocation

is the same as the standard for approving a settlement: whether it is "fair, adequate and reasonable

and is not the product of collusion between the parties."  *In re Chicken Antitrust Litig. Am. Poultry*,

669 F.2d 228, 238 (5th Cir. 1982).  A plan of allocation is fair and reasonable as long as it has a

"rational basis."  *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557-CM, 2014 WL

7323417, at *10 (S.D.N.Y. Dec. 19, 2014).  In determining whether a plan of allocation is fair and

reasonable, courts give weight to the opinion of experienced counsel.  *See Yang v. Focus Media*

*Holding Ltd.*, No. 11-Civ. 9051 (CM), 2014 WL 4401280, at *9 (S.D.N.Y. Sept. 4, 2014).

Here, the proposed Plan of Allocation, which was developed by Lead Plaintiffs' damages

expert in consultation with Lead Counsel, is a fair and reasonable method for allocating the Net

Settlement Fund among eligible members of the Settlement Class who submit valid Claim Forms

---

[10] Declaration of Rich Piombo, Co-Chairman of the Pension Trust Fund for Operating Engineers (Ex. 1 to the Joint Decl.) (the "Piombo Decl."), at ¶¶5-6; and Declaration of Mark Lamb, Trustee of the Lake Worth Firefighters' Pension Trust Fund (Ex. 2 to the Joint Decl.) (the "Lamb Decl."), at ¶¶5-6.

("Authorized Claimants").[11]  The details of the Plan of Allocation, which are set forth in the Notice, are consistent with the PSLRA and numerous other securities class actions that have been approved by courts across the country.  ¶¶79-84.  Moreover, no class members have objected to the Plan of Allocation to date.  Accordingly, Lead Plaintiffs submit that the Plan of Allocation is fair, adequate and reasonable and should be approved by the Court.

## IV.   NOTICE TO THE CLASS SATISFIED RULE 23 AND DUE PROCESS

Notice to the Settlement Class of the proposed Settlement satisfied Rule 23's requirement of "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974).

Following the May 15, 2017 hearing on Lead Plaintiffs' motion for preliminary approval, Lead Counsel revised the proposed form of notice to explain as plainly as possible the proposed Settlement and proposed Plan of Allocation.  In accordance with the Court's Preliminary Approval Order (ECF No. 159), the Claims Administrator began mailing copies of the Notice Packet to potential Settlement Class Members and their nominees on June 15, 2017, and more than 194,000 Notice Packets have been mailed to date.  *See* Thurin Decl. ¶¶3-4, 7.  In addition, the Summary Notice was published in *Investor's Business Daily* and transmitted over the *PR Newswire* on June 26, 2017, and copies of the Notice, Claim Form, Stipulation, Preliminary Approval Order, and Complaint have been posted to the website established for the Action, www.RayonierSecuritiesSettlement.com, as well as Lead Counsel's websites  *Id.* ¶¶8, 10.

The Notice (a copy of which is attached as Exhibit A to the Thurin Decl.), advised potential Settlement Class Members of, among other things: (i) their right to exclude themselves from the

---

[11] *See* Declaration of Zachary Nye, Ph.D. (Ex. 5 to the Joint Decl.), at ¶¶3-11.

Settlement Class; (ii) their right to object to any aspect of the Settlement, the Plan of Allocation, or the attorneys' fees and expense request; and (iii) the method for submitting a Claim Form in order to be eligible to receive a payment from the proceeds of the Settlement.

The Notice program satisfied Rule 23(e)(1)'s requirement that notice of a settlement be "reasonable" – *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" (*Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 114 (2d Cir. 2005)), and it was "the best notice . . . practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182-83 (S.D.N.Y. 2014).

## V.    LEAD COUNSELS' FEE AND EXPENSE REQUEST IS FAIR AND REASONABLE

In undertaking this difficult and costly litigation on a fully contingent basis, Lead Counsel faced numerous challenges to proving both liability and damages that raised serious risks of no recovery, or a significantly lesser recovery than $73,000,000.  The prosecution and settlement of this Action required extensive efforts on the part of Lead Counsel, particularly given the complexity of the legal and factual issues and the vigorous defense by Defendants and their six formidable defense firms.  The risk of no recovery was very real here, and there was no guarantee that the claims would survive summary judgment, much less succeed at trial.

Despite these significant risks, Plaintiffs' Counsel collectively worked more than 21,500 hours, and incurred unreimbursed expenses of $616,806.40, over the course of two and a half years, to achieve the Settlement, all on a contingent-fee basis with no assurance of ever being paid. In light of the recovery obtained, the time and effort devoted by Plaintiffs' Counsel, the complexity and amount of work performed, the skill and expertise of counsel, and the risks, Lead Counsel respectfully submit that the requested award of $33^{1/3}$% of the Settlement Fund and reimbursement of Litigation Expenses in the amount of $616,806.40, is fair and reasonable, and well within the

range of attorneys' fees awarded by federal courts in this Circuit and throughout the nation in

similar complex contingency cases.  To date, no Settlement Class member has objected to the fee

and expense request, and Lead Plaintiffs support the fee request and believe it to be fair and

reasonable.  *See* Piombo Decl.  ¶¶7-8; Lamb Decl. ¶¶7-8.

> ### A.    In The Eleventh Circuit, A Reasonable Percentage Of The Recovery Is The Appropriate Method For Awarding Attorneys' Fees

Courts have long recognized that attorneys who obtain a recovery for a class in the form of

a common fund are entitled to an award of fees and expenses from that fund.  *See Boeing Co. v.*

*Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970).

The Eleventh Circuit held that "attorneys' fees awarded from a common fund shall be based upon

a reasonable percentage of the fund established for the benefit of the class."  *Camden I Condo.*

*Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991).   In addition, courts recognize that, in

addition to providing just compensation, fee awards serve to "encourage enforcement of the

securities laws and support attorneys' decisions to take these types of cases on a contingent fee

basis" and "perpetuate the availability of skilled counsel for future cases of this nature."[12]

> ### B.    The *Camden* Factors Confirm That The Fee Request Is Fair And Reasonable

The Eleventh Circuit recommends that district courts consider several factors to determine

whether a requested percentage award is reasonable, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions
> involved; (3) the skill requisite to perform the legal service properly; (4) the
> preclusion of other employment by the attorney due to the acceptance of the case;
> (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations
> imposed by the client or the circumstances; (8) the amount involved and the results

---

[12] *In re Priceline.com, Inc. Sec. Litig.*, No. 00-cv-1884-AVC, 2007 WL 2115592, at *5 (D. Conn. July 20, 2007); *accord Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1217 (S.D. Fla. 2006) ("Attorneys who undertake the risk to vindicate legal rights that may otherwise go unredressed function as 'private attorneys general.' . . . Unless that risk is compensated with a commensurate reward, few firms, no matter how large or well financed, will have any incentive to represent the small stake holders in class actions against corporate America, no matter how worthy the cause or wrongful the defendant's conduct."); *Ressler*, 149 F.R.D. at 657 ("public policy favors the granting of counsel fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions").

obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).  *Camden I* also recognized that in awarding a percentage fee award, a court may also properly consider "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel . . . and the economics involved in prosecuting a class action."  *Id*. at 775.

### 1.     The Time And Labor Required

A review of the efforts and time expended by Plaintiffs' Counsel confirms that the requested fee is fully justified.  Plaintiffs' Counsel expended over 21,500 hours in this litigation with a resulting lodestar of $10,757,656.25 in this Action.  ¶107.  The time and labor expended by Plaintiffs' Counsel amply support the requested fee.  *Thorpe v. Walter Inv. Mgmt. Corp*., No. 14-cv-20880, 2016 U.S. Dist. LEXIS 144133, at *26 (S.D. Fla. Oct. 14, 2016) (finding that the "significant time and labor that Class Counsel expended on behalf of the Class with no assurance of ultimately being paid" supported counsel's fee request).

The Joint Declaration details the time, labor and skill that Plaintiffs' Counsel devoted to the successful prosecution of the Action.  As set forth therein, Lead Counsel prepared two detailed, amended complaints based on an extensive investigation and thorough research (¶¶13-14, 20-21); opposed two rounds of motions to dismiss filed by Defendants through detailed briefing and two oral arguments (¶¶13-17); conducted extensive discovery, including obtaining and analyzing over 1.58 million pages of documents produced by Defendants and third parties, defending the depositions of Lead Plaintiffs and Lead Plaintiffs' econometric expert in connection with class certification discovery, and preparing for numerous depositions that were scheduled to begin

shortly after the Settlement was reached (¶¶20-38); and engaged in extensive settlement negotiations, including two in-person mediation sessions (¶¶69-74).

While not required in the Eleventh Circuit, an analysis of the requested fee under the "lodestar/multiplier" approach further supports the reasonableness of a 33$^{1/3}$% award. *See, e.g., Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) ("while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison").  Here, based on the $73 million Settlement Fund, the requested one-third fee award, or $24,333,333 before interest, represents a multiplier of approximately 2.26 on Plaintiffs' Counsel's total lodestar.[13]  The multiplier requested here is at the very low end of the "2.26 to 4.5" range of multipliers frequently awarded in class action settlements of similar magnitude in courts within the Eleventh Circuit.[14]

### 2.    The Novelty And Difficulty Of The Issues

As courts have recognized, "multi-faceted and complex" issues are "endemic" to cases based on alleged violations of federal securities law (*Ressler*, 149 F.R.D. at 654), and "securities actions have become more difficult from a plaintiff s perspective in the wake of the PSLRA."[15]

---

[13] The multiplier is calculated by dividing the $24,333,333 fee request by the $10,757,656.25 in lodestar that Plaintiffs' Counsel incurred.

[14] *See, e.g., Pinto v. Princess Cruise Lines, Ltd.,* 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (finding that lodestar multipliers "'in large and complicated class actions' range from 2.26 to 4.5," and that many cases have awarded higher multipliers) (citations omitted); *Ingram v. Coca-Cola Co.,* 200 F.R.D. 685, 694-96 (N.D. Ga. 2001) (awarding fee representing a multiplier between 2.5 and 4); *Mashburn v. Nat'l Healthcare, Inc.,* 684 F. Supp. 679, 702 (M.D. Ala. 1988) ("A multiplier of approximately 3.1 in a national class action securities case is not unusual or unreasonable."). Moreover, Plaintiffs' Counsel's lodestar does not include time spent subsequent to July 15, 2017. Lead Counsel will necessarily expend substantial additional hours and resources overseeing the claims and distribution process and responding to Settlement Class Member inquiries.

[15] *In re Sterling Fin. Corp. Sec. Class Action,* No. Civ. 07-2171, MDL No. 1879, 2009 WL 2914363, at *4 (E.D. Pa. Sept. 10, 2009).  In regards to securities class actions, courts "have long recognized that such litigation is notably difficult and notoriously uncertain." *In re Giant Interactive Grp., Inc. Sec. Litig.,* 279 F.R.D. 151, 160 (S.D.N.Y. 2011); *In re Ikon Office Solutions, Inc., Sec. Litig.,* 194 F.R.D. 166, 179, 194 (E.D. Pa. 2000) (noting the "inherently complicated nature of large class actions alleging securities fraud" and that in private fee negotiations "plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery").

This Action was no exception.  Lead Plaintiffs and Lead Counsel faced several novel and difficult issues in this Action, including vigorously contested motions to dismiss involving complicated facts and difficult legal issues that challenged all of the elements of their claims.  As further detailed in the Joint Declaration, Defendants contested their liability on falsity, materiality and scienter grounds, as well as issues regarding loss causation and damages.

Defendants prevailed entirely on the first motions to dismiss, and Lead Plaintiffs at that juncture faced the choice of resolving the Action at a lower level or proceeding with litigation with no assurance of overcoming Defendants' second motions to dismiss.  Facing that risk, Lead Plaintiffs pressed forward.  Defendants argued throughout the litigation that their alleged misstatements regarding Rayonier's sustainable harvesting practices were not materially false, and attempted to offer credible, non-fraudulent alternative explanations for their conduct, including that Rayonier's alleged corrective disclosures were simply the result of a change in business strategy, and not fraud.  ¶¶55-58.  Defendants had strong arguments that proof of scienter was lacking, including the lack of an SEC enforcement action as support for non-fraudulent intent. ¶59.  Finally, there was a real risk that the Court on summary judgment or a jury after trial, could have found no violations of the securities laws or damage to the Class.  ¶¶61-65.

Had the litigation continued, Defendants would have contested these issues through summary judgment, trial, and any appeals.[16]  This risk is exacerbated by the requirement that jurors reach unanimous decisions. Notwithstanding these obstacles, Lead Counsel achieved an excellent result for the Settlement Class, thus strongly supporting the requested fee award.

---

[16] *See Thorpe*, 2016 U.S. Dist. LEXIS 144133, at *27 (risk of "successfully maintain[ing] class certification through trial, and prove damages, requiring additional complicated expert testimony" supported counsel's fee award).

### 3.      The Skill, Experience, Reputation And Ability Of The Attorneys

The court should also consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one," *David v. Am. Suzuki Motor Corp.*, No. 08-CV-22278, 2010 WL 1628362, at *8 n.15 (S.D. Fla. Apr. 15, 2010), and "the experience, reputation and ability of the attorneys" involved. *Camden I*, 946 F.2d at 772 n.3.

Considerable litigation skills were required and called upon here.  As noted above, this is a highly complex case involving difficult factual and legal issues.  Given the complexity of the Action and the presence of numerous contested issues, it took highly-skilled counsel to represent the Settlement Class and bring about the excellent recovery that has been obtained.  As demonstrated by their respective firm résumés, BLB&G and Saxena White are qualified and experienced firms in complex class action litigation involving claims under, among other statutes, the federal securities laws.[17]  Without question, Lead Counsel's skills and experience were a major factor in obtaining the excellent result achieved in this Settlement.

This Court should also consider the "quality of the opposition the plaintiffs' attorneys faced" in awarding Lead Counsel a fee.  *Sunbeam*, 176 F. Supp. 2d at 1334; *see also Ressler*, 149 F.R.D. at 654.  Here, Defendants were represented by six nationally prominent defense firms, including Jones Day; Burr & Forman, LLP; Buckley Sandler LLP; Foley & Lardner, LLP; Friedman Kaplan; and Bedell, Dittmar, DeVault, Pillans & Coxe.  Lead Counsel's ability to obtain a favorable Settlement despite this formidable legal opposition confirms the quality of the representation.

### 4.      The Preclusion Of Other Employment

The considerable amount of time spent prosecuting this case – over 21,500 hours (¶107) –

---

[17] *See* BLB&G's firm résumé attached as Exhibit 1 to Exhibit 8 to the Joint Decl.; Saxena White's firm résumé attached as Exhibit 1 to Exhibit 9 to the Joint Decl.

was time that Plaintiffs' Counsel could not devote to other matters.  Moreover, Plaintiffs' Counsel expended this time and effort without any assurance that they would ever be compensated for their hard work.  Accordingly, this factor also supports the requested fee.

### 5.  The Customary And Contingent Nature Of The Fee

The "customary fee" in a class action lawsuit of this nature is a contingency fee because virtually no class member possesses a sufficiently large stake in the litigation to justify paying attorneys on an hourly basis.  *See Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).  The contingent nature of Plaintiffs' Counsel's fees should be given substantial weight in assessing the requested fee.  Courts have consistently recognized that the risk that class counsel could receive little or no recovery is a major factor in determining a fee award:

> A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee . . . and the fact that the risks of failure and nonpayment in a class action are extremely high.  Cases recognize that attorneys' risk is "'perhaps the foremost' factor" in determining an appropriate fee award.

*Pinto*, 513 F. Supp. 2d at 1339; *see also In re Friedman's Inc. Sec. Litig.*, No. 03-cv-3475-WSD, 2009 WL 1456698, at *3 (N.D. Ga. May 22, 2009) ("The contingent nature of fees in this case should be given substantial weight in assessing the requested fee award."); *Behrens*, 118 F.R.D at 548 ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees.").

"Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981).  This is so because of the risk that after investing thousands of hours, plaintiffs' counsel may receive no compensation whatsoever. Indeed, *Behrens*, 118 F.R.D at 548, notably provides:

> In a securities fraud action, a contingency fee arrangement has added significance. The federal securities laws are remedial in nature and, in order to effectuate their statutory purpose of protecting investors and consumers, private lawsuits should be encouraged.  If the ultimate effectiveness of these remedies is to be preserved, the

efficacy of class actions and of contingency fee arrangements — often the only means of legal representation available given the incredible expense associated with these actions — must be promoted.

In other cases, plaintiffs' counsel have suffered major defeats after years of litigation in which they expended millions of dollars in time and expenses and received no compensation at all, even after a trial victory.[18]  The substantial risks here justify the requested fee.

### 6.      The Amount Involved And Results Achieved

"It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained." *Ressler*, 149 F.R.D. at 655; *see also Friedman's*, 2009 WL 1456698, at *3 (same).  As noted above, the excellent result obtained here was accomplished despite the substantial difficulties of proving liability for securities fraud and the risks of establishing loss causation and damages in this case.  It was only through the extensive efforts of Lead Counsel that allowed Lead Plaintiffs to achieve the $73 million cash Settlement—the *second largest recovery* from a securities class action achieved in the Middle District of Florida.  ¶5.  Moreover, the Settlement far exceeds the inflation-adjusted median of $8.3 million, and represents a 20.8% recovery of estimated aggregate damages, well above the 2.6% median.

### 7.      The Undesirability Of The Action: No One Else Sought To Lead

The "undesirability" of a case is a factor listed in *Camden* justifying the award of a requested fee.  *In re Sunbeam*, 176 F. Supp. 2d at 1336 ("A court's consideration of this factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk.").  Notably, at the lead plaintiff stage, no other motion for appointment as lead plaintiff and lead counsel was filed, which is highly unusual in securities litigation, where multiple motions by competing lead plaintiffs are common.  *Thorpe*, 2016 U.S. Dist. LEXIS 144133, at *32-33

---

[18] *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (overturning jury verdict); *BankAtlantic*, 2011 WL 1585605, at *1 (same).

("The Court notes that Co-Class Counsel was the only counsel willing to take on this litigation. Under such circumstances, this factor supports an upward adjustment to the benchmark."). When Lead Counsel undertook this representation, it was with the knowledge that Lead Counsel would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. Absent such efforts, it is likely that no action would have been brought at all. Moreover, as discussed above, the SEC closed its investigation of the issues in this litigation without filing an enforcement action. All of these facts and obstacles further underscore the undesirability of this case from a risk perspective.

### 8.      The Reaction Of The Settlement Class

In further confirmation of the reasonableness of the requested fee, no member of the Settlement Class has, to date, filed an objection to it. The Notice advised Settlement Class Members that Lead Counsel would apply for fees not to exceed one-third of the Settlement Fund, and that the deadline for filing objections to the fee application is August 18, 2017. The lack of any objection is itself important evidence that the requested fee is fair. *See Pinto*, 513 F. Supp. 2d at 1343 ("That this sizeable class did not give rise to a single objection on the fees request further justifies the full award"); *Ressler*, 149 F.R.D. at 656 (noting that the lack of objections is "strong evidence of the propriety and acceptability" of the fee request).[19]

### C.      The Requested Fee Is Fair And Reasonable Compared To Similar Actions

The Eleventh Circuit has explained that "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Camden I*, 946 F.2d at 774. (noting that "an upper limit of 50% of the fund may be stated as a general rule, although even

---

[19] Should any objections be filed, Lead Counsel will address them in reply papers to be filed on September 1, 2017.

larger percentages have been awarded"). Notably, in "securities class action settlements, courts have awarded attorneys' fees of 30% or 33%." *Thorpe*, 2016 U.S. Dist. LEXIS 144133, at *23-25 (finding that "30% is an appropriate benchmark here, given the complexity of this matter and the skill that is required," and ultimately adjusting the fee upward to 33.3%). The Eleventh Circuit has stated that an award "may be adjusted in accordance with the individual circumstances of each case." *Camden I*, 946 F.2d at 775; *see also Waters*, 190 F.3d at 1294-95 (the benchmark "should be 30%" and then adjusted upward to 33.3% based on the facts of the case).

A one-third award is particularly appropriate here because of the highly complex issues involved, the extraordinary investment of time and resources, the result achieved, the approval of Lead Plaintiffs, the risks in the litigation, and the absence of any government action. Indeed, a review of percentage fee awards in securities class actions and other comparable class actions in this Circuit confirms that the one-third fee sought by Lead Counsel is fair and reasonable:

| Comparable Class Cases Within The 11th Circuit | Settlement Amount | Fee Award |
|---|---|---|
| *Gutter v. E.I. Dupont De Nemours & Co.*, No. 95-cv-2152, 2003 U.S. Dist. LEXIS 27238, at *12 (S.D. Fla. May 30, 2003) | $77.5 million | 33.3% |
| *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-md-1317, 2005 U.S. Dist. LEXIS 43082, at *22 (S.D. Fla. Apr. 19, 2005) | $72.5 million | 33.3% |
| *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-98 (11th Cir. 1999) | $40 million | 33.3% |
| *City Pension Fund for Firefighters & Police Officers in City of Miami Beach v. Aracruz Celulose S.A.*, No. 08-cv-23317, slip op. at 7 (S.D. Fla. July 17, 2013) | $37.5 million | 33.3% |
| *Thorpe v. Walter Inv. Mgmt. Corp.*, No. 1:14-cv-20880, 2016 U.S. Dist. LEXIS 144133, at *35 (S.D. Fla. Oct. 14, 2016) | $24 million | 33.3% |
| *In re Walter Energy, Inc. Sec. Litig.*, No. 12-CV-00281, slip op. at 2 (N.D. Ala. May 3, 2016) | $25 million | 33% |
| *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1189 (S.D. Fla. 2006) | $1.06 billion | 33$^{1/3}$% |
| *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1366 (S.D. Fla. 2011) | $410 million | 30% |
| *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, No. 2:10-CV-02847-KOB, 2015 WL 5626414, at *1 (N.D. Ala. Sept. 14, 2015) | $90 million | 30% |
| *Mosser v. TD Bank, N.A.* (*In re Checking Account Overdraft Litig.*, MDL No. 2036), 2013 U.S. Dist. LEXIS 187627, at *92 (S.D. Fla. Mar. 18, 2013) | $62 million | 30% |
| *In re BellSouth Corp. Sec. Litig.*, 1:02-cv-2142-WSD, 2007 U.S. Dist. LEXIS 98429, at *10 (N.D. Ga. Apr. 9, 2007) | $35 million | 30% |
| *In re Cryolife, Inc. Sec. Litig.*, No. 1:02-cv-1868-BBM, slip op. at 9 (N.D. Ga. Nov. 9, 2005) | $23.25 million | 30% |

In addition, a review of comparable securities class actions and other comparable class actions in other Circuits also supports the reasonableness of the fee request:

| Comparable Class Cases Nationwide | Settlement Amount | Fee Award |
|---|---|---|
| *In re Vitamins Antitrust Litig.*, No. 99-197, 2001 WL 34312839, at *10 (D.D.C. July 16, 2001) | $365 million | 34.06% |
| *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) | $586 million | 33⅓% |
| *In re Relafen Antitrust Litig.*, No. 01-12239, slip op. at 8 (D. Mass. Apr. 9, 2004) | $175 million | 33⅓% |
| *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 286 (D. Minn. 1997) | $86 million | 33⅓% |
| *Landmen Partners Inc. v. Blackstone Grp.*, No. 08-cv-03601, slip op. at 5 (S.D.N.Y. Dec. 18, 2013) | $85 million | 33.33% |
| *In re Skelaxin (Metaxalone) Antitrust Litig.*, MDL No. 2343, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) | $73 million | 33⅓% |
| *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 80-82 (D. Mass. Sept. 28, 2005) | $67 million | 33⅓% |
| *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 433-35 (E.D. Pa. 2001) | $48 million | 33⅓% |
| *Schleicher v. Wendt*, No. 02-cv-1332, slip op. at 5-6 (S.D. Ind. Feb. 17, 2011) | $41.4 million | 33⅓% |
| *In re Prison Realty Sec. Litig.*, No. 99-0458, 2001 U.S. Dist. LEXIS 21942, at *3-5 (M.D. Tenn. Feb. 9, 2001) | $104 million | 30% |
| *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *1 (E.D. Pa. June 2, 2004) | $202 million | 30% |
| *Kurzweil v. Philip Morris Cos., Inc.*, Nos. 94-cv-2373, 94-cv-2546, 1999 WL 1076105 (S.D.N.Y. Nov. 30, 1999) | $123 million | 30% |
| *In re Cardizem CD Antitrust Litig.*, No. 99-73259, slip op. at 2 (E.D. Mich. Nov. 25, 2002) | $110 million | 30% |
| *In re Aetna Inc. Sec. Litig.*, No. CIV. A. MDL 1219, 2001 WL 20928, at *14 (E.D. Pa. Jan. 4, 2001) | $81 million | 30% |
| *In re Priceline.com, Inc. Sec. Litig.*, No. 3:00-CV-1884 (AVC), 2007 WL 2115592, at *4 (D. Conn. 2007) | $80 million | 30% |
| *In re Bisys, Inc. Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) | $65.8 million | 30% |
| *Nichols v. Smithkline Beecham Corp.*, No. 00-6222, 2005 WL 950616, at *24 (E.D. Pa. Apr. 22, 2005) | $65 million | 30% |
| *In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*, No. 07-cv-02830, slip op. at 21 (W.D. Tenn. Aug. 5, 2013) | $62 million | 30% |
| *Medoff v. CVS Caremark Corp.*, No. 09-00554, slip op. at 3 (D.R.I. Feb. 17, 2016) | $48 million | 30% |
| *In re Groupon, Inc. Sec. Litig.*, No. 12-cv-02450, slip op. at 8 (N.D. Ill. July 13, 2016) | $45 million | 30% |

### D.     Lead Plaintiffs' Endorsement Of The Requested Fee Supports Its Approval

In enacting the PSLRA, Congress encouraged institutional investors to serve as lead plaintiffs and direct the litigation, including selecting and monitoring class counsel. *See Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1260 (11th Cir. 2014). Accordingly, "in a PSLRA case . . . a fee request that has been approved and endorsed by properly-appointed lead plaintiffs . . . enjoys a presumption of reasonableness." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 261 (E.D. Va. 2009).

Here, Lead Plaintiffs are sophisticated institutional investors who closely supervised the litigation and Lead Counsel, and have approved the requested fee as fair and reasonable in light of the work performed, the recovery obtained for the Settlement Class, and the risks of the Action.

*See* Piombo Decl. ¶6; Lamb Decl. ¶6.  Lead Plaintiffs' endorsement supports approval of the fee. *See In re Carter's, Inc. Sec. Litig.*, No. 08-cv-2940-AT, 2012 WL 12877943, at *2 (N.D. Ga. May 31, 2012) (approving fee request that was "reviewed and approved as fair and reasonable by Lead Plaintiff, a sophisticated institutional investor"); *In re NU Skin Enters., Inc.*, No. 14-cv-00033, 2016 WL 6916486, at *2 (D. Utah Oct. 13, 2016) (same).

### E.   Lead Counsel's Expense Reimbursement Request Is Fair And Reasonable

Lead Counsel also request reimbursement of $616,806.40 in Litigation Expenses incurred by Plaintiffs' Counsel in prosecuting the Action.  Litigation expenses should be reimbursed if they are "reasonable and necessary to obtain the settlement."  *Ressler*, 149 F.R.D. at 657; *see also* 1 Alba Conte, *Attorney Fee Awards*, § 2.19, at 73-74 (3d ed. 2006) ("an attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved").

The expenses for which Lead Counsel seek reimbursement are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour.  These expenses include, among others, costs for experts, mediation fees, a document database, on-line research, court fees, telephone, photocopying, postage, and out-of-town travel.  A complete categorical breakdown of the expenses incurred by Plaintiffs' Counsel is included in Exhibit 7 to the Joint Declaration.  These expense items are billed separately by Plaintiffs' Counsel, and these charges are not duplicated in the firms' hourly billing rates.

The Notice informed potential Settlement Class Members that Lead Counsel would apply for reimbursement of Litigation Expenses in an amount not to exceed $1.1 million.  *See* Notice at 2, 13.  The total amount of expenses requested by Lead Counsel is $620,886.40, which includes $616,806.40 in reimbursement of Litigation Expenses incurred by Plaintiffs' Counsel and $4,080.00 in reimbursement of costs and expenses collectively incurred by Lead Plaintiffs in their

representation of the Settlement Class, an amount below the figure listed in the Notice.  To date, there has been no objection to the request for expenses.

Because the Litigation Expenses incurred by Lead Counsel are of the type for which reimbursement is routinely ordered in class actions and were essential to the successful prosecution and resolution of the Action, reimbursement of these expenses should be granted.

**F.   Lead Plaintiffs' Request For Reimbursement Of Costs Directly Related To Their Representation Of The Settlement Class Is Fair And Reasonable**

In connection with their request for reimbursement of Litigation Expenses, Lead Counsel also seek reimbursement of the costs and expenses incurred directly by Lead Plaintiffs in their representation of the Class.  The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

Here, Operating Engineers and Lake Worth seek awards of $1,680.00 and $2,400.00, respectively, for the reasonable time and expenses dedicated by their employees to furthering and supervising the Action.  *See* Piombo Decl. ¶¶9-10; Lamb Decl. ¶¶9-10.  Numerous courts have approved reasonable awards to compensate lead plaintiffs for their efforts on behalf of a class.[20]

**VI.   CONCLUSION**

For the reasons discussed above and in the Joint Declaration, Lead Plaintiffs respectfully request that the Court grant final approval of: (i) the Settlement; (ii) the Plan of Allocation; and (iii) Lead Counsel's fee and expense award and Lead Plaintiffs' reimbursement award.

---

[20] *See, e.g.*, *Thorpe*, 2016 U.S. Dist. LEXIS 144133, at *35 (awarding $15,000 to each class representative as "fair and reasonable"); *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 2015 WL 5626414, at *2 (N.D. Ala. Sept. 14, 2015) (awarding $9,000).

Dated: August 4, 2017                    Respectfully submitted,

                                         **SAXENA WHITE P.A.**

                                         By: */s/ Joseph E. White, III*
                                               Maya Saxena (FL Bar No. 0095494)
                                               Joseph E. White, III (FL Bar No 621064)
                                               Lester R. Hooker (FL Bar No. 32242)
                                               5200 Town Center Circle, Suite 601
                                               Boca Raton, FL 33486
                                               Tel: (561) 394-3399
                                               Fax: (561) 394-3382
                                               msaxena@saxenawhite.com
                                               jwhite@saxenawhite.com
                                               lhooker@saxenawhite.com

                                         **BERNSTEIN LITOWITZ BERGER**
                                         **& GROSSMANN LLP**

                                         By: */s/ David R. Stickney*
                                               David R. Stickney (*pro hac vice*)
                                               Jonathan D. Uslaner (*pro hac vice*)
                                               Brandon Marsh (*pro hac vice*)
                                               Jenny E. Barbosa
                                               12481 High Bluff Drive, Suite 300
                                               San Diego, CA 92130
                                               Tel: (858) 793-0070
                                               Fax: (858) 793-0323
                                               davids@blbglaw.com
                                               jonathanu@blbglaw.com
                                               brandon.marsh@blbglaw.com
                                               jenny.barbosa@blbglaw.com

                                         *Counsel for Lead Plaintiffs the Pension Trust Fund For*
                                         *Operating Engineers and the Lake Worth Firefighters'*
                                         *Pension Trust Fund and Lead Counsel for the Class*

                                         **KLAUSNER, KAUFMAN, JENSEN & LEVINSON**
                                               Robert D. Klausner
                                               7080 Northwest 4th Street
                                               Plantation, FL 33317
                                               Tel: (954) 916-1202
                                               Fax: (954) 916-1232
                                               bob@robertdklausner.com

                                         *Additional Counsel for Lead Plaintiff the Lake Worth*
                                         *Firefighters' Pension Trust Fund*

26

## <u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 3.01(g)</u>

Pursuant to Local Rule 3.01(g), Lead Counsel conferred with counsel for Defendants. Defendants do not adopt every statement made in this motion by Lead Plaintiffs, but they do not oppose the relief sought in this motion.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 4, 2017, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system.  This system will send electronic notice of filing to all counsel of record by operation of the Court's electronic filing system.


*/s/ David R. Stickney*
David R. Stickney