**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re Rayonier Inc. Securities
Litigation

Case No. 3:14-cv-1395-J-32JBT

# ORDER AWARDING ATTORNEYS' FEES AND EXPENSES

This matter is before the Court on Lead Plaintiffs the Pension Trust Fund For Operating Engineers and the Lake Worth Firefighters' Pension Trust Fund's Motion for Final Approval of the Proposed Settlement, the Plan of Allocation, and Lead Counsel's Request for Attorneys' Fees and Expenses filed on August 4, 2017. (Doc. 163).[1] All capitalized terms used herein shall have the same meaning as they have in the Stipulation and Agreement of Settlement (the "Stipulation"), dated and filed with the Court on April 12, 2017.  The Court having considered all matters submitted to it at the hearing held on September 19, 2017, and otherwise; and it appearing that a notice substantially in the form approved by the Court (the "Notice") was mailed to all reasonably identified persons or entities who purchased the publicly traded common stock of Rayonier Inc. ("Rayonier") during the period from October 26, 2010, through November 7, 2014, inclusive, and were allegedly damaged thereby (the "Settlement Class"); and that a summary notice (the "Summary Notice"), substantially in the form

---

[1] This Order only deals with attorneys' fees and costs. The Court has entered separate Orders finally approving the settlement and the plan of allocation. (Docs. 173, 174).

approved by the Court, was published in Investor's Business Daily and was transmitted over PR Newswire; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and expenses requested;

NOW, THEREFORE IT IS HEREBY ORDERED THAT:

1. The Court has jurisdiction over the subject matter of this Action and all parties to the Action, including all Settlement Class Members.

2. Notice of Lead Counsel's application for attorneys' fees and reimbursement of expenses was given to all Settlement Class Members who could be identified with reasonable effort. The form and method of notifying the Settlement Class of the application for attorneys' fees and expenses met the requirements of Rule 23 of the Federal Rules of Civil Procedure, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

3. Lead Counsel have requested attorneys' fees in the amount of one-third ($33^{1/3}$%) of the common class settlement fund of $73,000,000, or $24,333,333.33, as well as payment of litigation expenses in the amount of $616,806.40.[2] The Court evaluates the attorneys' fee request in light of the standard set forth by the Eleventh Circuit in Camden I Condominium Association, Inc. v. Dunkle, 946 F.2d 768, 773 (11th Cir.

---

[2] Under the settlement, the amount awarded in attorneys' fees and costs is subtracted from the funds available for distribution to the class.

1991). In Camden I, the Eleventh Circuit stated that an attorney's fee in a common fund case should be calculated as a reasonable percentage of the recovery received by the class. Id. at 773. The Court stated that district courts should begin with a 20-30% range and adjust the percentage up or down based on "the individual circumstances of each case, as opposed to the lodestar hourly fee used in statutory fee awards." Id. at 775. The Camden I court observed that "district courts are beginning to view the median of this 20% to 30% range, i.e., 25%, as a 'bench mark' percentage fee award," thereby establishing 25% as the benchmark for common fund cases in the Eleventh Circuit. See Amason v. Pantry, Inc., No. 7:09-CV-02117-RDP, 2014 WL 12600263, at *2 (N.D. Ala. July 3, 2014) (25% of the fund viewed as a benchmark percentage fee award); James D. Hinson Elec. Contracting Co. v. BellSouth Telecomms. Inc., No. 3:07-CV-598-TJC-MCR, 2012 WL 12952592, at *2 (M.D. Fla. July 30, 2012) ("the benchmark of 25 percent approved by the Eleventh Circuit in Camden I"); In re Sunbeam Sec. Litig., 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001) (25% benchmark in common fund case). At oral argument, Lead Counsel agreed that "Camden [I] says . . . the benchmark is around 25 percent." (Doc. 171 at 46).

The Court recognizes that the Eleventh Circuit has previously approved the district court's selection of 30% as an appropriate benchmark (with a final award of $33^{1/3}$%) in Waters v. Int'l Precious Metals Corp., a securities class action. 190 F.3d 1291 (11th Cir. 1999). However, Waters involved certain facts that distinguish it from this case, such as seven years of contentious litigation and five months of trial, among others. Here, the case settled after two and a half years of litigation, before a

3

ruling on the motion for class certification, and without a trial. Under these circumstances, the 25% benchmark discussed in Camden I remains appropriate. In determining the attorneys' fee award, the Court has considered all of the factors identified in Camden I but will discuss only some of them here.[3]

"A securities case, by its very nature, is a complex animal." In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151, 164 (S.D.N.Y. 2011) (internal quotations omitted). Accordingly, the Court notes the inherent difficulty Lead Plaintiffs faced in bringing a class action based on alleged violations of federal securities law, particularly in the wake of the PSLRA.[4]  See Thorpe v. Walter Inv. Mgmt. Corp., 2016 U.S. Dist. Lexis 144133, at *26 (S.D. Fla. Oct. 17, 2016); Ressler v.

---

[3] The Eleventh Circuit identified several factors which should be considered in arriving at a reasonable percentage fee: "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases." Camden I, 946 F.2d at 772 n.3 (citing Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 717 (5th Cir. 1974)). "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." Id. at 775.

Because of the lack of objections from class members, combined with the fact that Lead Counsel stated at the Fairness Hearing that there would likely be no appeal of the Court's attorneys' fee award if the benchmark or a higher amount was awarded, (Doc. 171 at 65), the Court will not do an exhaustive analysis of each of the Camden I factors.

[4] Camden I, which established 25% as a benchmark, was not a securities class action.

4

Jacobson, 149 F.R.D. 651, 654 (M.D. Fla. 1992); In re Sunbeam Sec. Litig., 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001). Significantly, the case did not involve a contested Lead Plaintiff fight, which Lead Counsel described as "pretty much unheard of," and reinforces the undesirability of the case in its infancy. (Doc. 171 at 54). Lead Counsel also demonstrated the substantial time and effort they put into the case[5] as well as the uncertainty of the ultimate outcome.

The parties settled for $73 million in cash—the second largest recovery from a securities class action achieved in the Middle District of Florida. This figure is nearly nine times the national median settlement of $8.3 million and nearly ten times greater than the median recovery in the Eleventh Circuit. The settlement represents a 20.8% recovery of estimated aggregate damages, which is well above 2.6%, the median recovery in similarly-sized securities class actions. Lead Counsel estimates that each damaged share will recover around $1.[6]

In addition to the settlement being objectively outstanding based on the statistics quoted above, the reaction of those involved in the case confirms this characterization. The Honorable Layn R. Phillips, a former United States District Judge who served as mediator in the second mediation, opined that the outcome "is

---

[5] The Court is advised that Lead Counsel devoted more than 21,500 hours in connection with this action, with a lodestar value of $10,757,656.25. However, consistent with the Eleventh Circuit's discussion in Camden I, the Court has not tested the lodestar or relied upon it.

[6] The Court accepts as true these assertions by Lead Counsel at oral argument and in the motion for final approval regarding the settlement amount, including its scope in comparison to other settlements in the Middle District of Florida, the Eleventh Circuit, and other circuits. Moreover, no class members have objected to them.

reasonable and fair for the Settlement Class and all parties involved." (Doc. 164-3 at 6). Even more importantly, based on their comparatively robust participation in the claims process and lack of objections to the settlement amount and attorneys' fee request, the Settlement Class apparently agrees. At the Fairness Hearing, Lead Counsel noted that approximately 43% of the outstanding shares of Rayonier are owned by four sophisticated business entities: BlackRock, Inc.; T. Rowe Price Group, Inc.; The Vanguard Group, Inc.; and JPMorgan Chase & Co. Though each of these institutional investors certainly has the business acumen and financial ability to opt out of the settlement or to object to the settlement or the attorneys' fee request, none of them did so. See In re Terazosin Hydrochloride Antitrust Litig., 2005 U.S. Dist. LEXIS 43082, *21-22 (S.D. Fla. Apr. 19, 2005) (noting that despite the presence of significant, sophisticated business entities in the Class, none objected to or opted out of the Class or the Settlement, and there was no objection to the requested fee award; finding the absence of any objection to the requested fee award further indication of its reasonableness and of the Class members' appreciation of Class Counsel's extensive efforts in this litigation). In addition, approximately 8,000 claims have been filed by individual class members, with no objections to the requested fee award, which is further indication of its reasonableness.

4. Given the findings set out above, and the exceptional results achieved for the benefit of the Settlement Class, the Court will upwardly adjust the 25% benchmark and award Lead Counsel attorneys' fees in the amount of 30% of the

6

common fund.[7] Lead Counsel are hereby awarded attorneys' fees in the amount of 30% of $73,000,000, or $21,900,000.00, as well as payment of litigation expenses in the amount of $616,806.40, which sums the Court finds to be fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5.   In accordance with 15 U.S.C. §78u-4(a)(4), Lead Plaintiff the Pension Trust Fund For Operating Engineers is hereby awarded $1,680.00 from the Settlement Fund and Lead Plaintiff the Lake Worth Firefighters' Pension Trust Fund is hereby awarded $2,400.00 from the Settlement Fund as reimbursement for their reasonable costs and expenses directly related to their representation of the Settlement Class.

6.   The award of attorneys' fees and litigation expenses may be paid to Lead Counsel from the Settlement Fund upon entry of this Order, subject to the terms, conditions, and obligations of the Stipulation, which terms, conditions and obligations are incorporated herein.

7.   In making this award of attorneys' fees and litigation expenses to be paid from the Settlement Fund, the Court has considered and found that:

(a)   The Settlement created a non-reversionary fund of $73,000,000 in cash;

---

[7] The Court's decision is limited to this case. The Court does not rule out that it might entertain awarding $33^{1/3}$% (or less than 25%) in a future case.

7

(b) Settlement Class Members who submit eligible Proofs of Claim will benefit from the Settlement created by the efforts of Lead Counsel;

(c) The request for attorneys' fees and payment of litigation expenses has been reviewed and approved as fair and reasonable by Lead Plaintiffs, sophisticated institutional investors that were directly involved in the prosecution and resolution of the claims and who have a substantial interest in ensuring that any fees paid to Lead Counsel are duly earned and not excessive;

(d) The Notice was disseminated to putative Settlement Class Members stating that Lead Counsel would seek fees of $33^{1/3}\%$ of $73,000,000, and payment of expenses in an amount not to exceed $1.1 million, and no objections have been received. The Court's award of $21,900,000 in attorneys' fees and $616,806.40 in costs is within these parameters;

(e) The Action involves complex factual and legal issues and, in the absence of a settlement, continuing with the claims against Defendants would involve lengthy proceedings whose resolution would be uncertain;

(f) Lead Counsel have prosecuted the claims and achieved the Settlement with sufficiently skillful and diligent advocacy;

(g) The Action was litigated on a purely contingent nature; and

(h) The amount of attorneys' fees awarded and litigation expenses reimbursed from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

8. Any appeal or any challenge affecting this Court's approval of the attorneys' fees and expense application or of the Plan of Allocation shall in no way disturb or affect the finality of the Judgment entered with respect to the Settlement.

9. Exclusive jurisdiction is hereby retained over the subject matter of this Action, and over all Parties to the Action, including the administration and distribution of the Net Settlement Fund to Settlement Class Members.

10. In the event that the Settlement is terminated or does not become Final or the Effective Date does not occur in accordance with the terms of the Stipulation, this Order shall be rendered null and void to the extent provided by the Stipulation and shall be vacated in accordance with the Stipulation.

**DONE AND ORDERED** in Jacksonville, Florida the 5th day of October, 2017.

TIMOTHY J. CORRIGAN
United States District Judge

sj
Copies:

Counsel of record